**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. **1:15-CV-1734**

**DENNIS OBDUSKEY, an individual**

     Plaintiff,

v.

**WELLS FARGO, WELLS FARGO BANK,
WELLS FARGO & CO., WELLS FARGO BANK NA,
WELLS FARGO HOME MORTGAGE, and
MCCARTHY AND HOLTHUS LLP**

     Defendants.

## COMPLAINT

**COMES NOW**, Dennis Obduskey, ("Plaintiff"), by and through his attorney Steven L. Hill of Riggs, Abney, Neal, Turpen, Orbison & Lewis, P.C. makes claims against Wells Fargo, Wells Fargo Bank, Wells Fargo & Co., Wells Fargo Bank NA and Wells Fargo Home Mortgage, and McCarthy and Holthus LLP ("Defendants") and alleges as follows:

### PRELIMINARY STATEMENT

This action is instituted in accordance with and to remedy Defendants' violations of the Federal Fair Debt Collections Practices Act, 15 U.S.C. Sections 1692 et seq. (hereinafter "FDCPA"), as well as its violations of related State law obligations brought as pendent claims hereto. Plaintiff brings this action to recover damages and to enjoin Defendants' unlawful conduct personally, as it affects all other consumers residing within the State of Colorado.

## FACTUAL ALLEGATIONS

1. Mr. Dennis Obduskey has been dealing with Wells Fargo regarding discrepancies with his home loan since 2009 after he accepted an unsolicited loan modification offer in 2008 (Exhibit 1).

2. Wells claims to have received properly signed and timely returned modification documents in 2009, however, they later claimed those returned agreement documents were sent in error and a new, revised offer was sent. No new documents were ever received by Plaintiff and over the course of several months in 2009, Plaintiff worked with different representatives to resolve the problem. Plaintiff was eventually advised he would now have to apply for a new loan modification under a new federal program called HAMP, the Home Affordable Modification Program (Exhibit 2) (Exhibit 3) (Exhibit 4). Plaintiff was never informed of the details related to lack of receiving new modification documents until a letter from Wells dated December 9, 2011 (Exhibit 5).

3. Plaintiff advised the Federal Trade Commission of ongoing problems with Wells and its legal counsel when the FTC sought consumer feedback related to mortgage servicing issues during a public comment phase. Plaintiff submitted public comments to the FTC on July 30, 2009 under the title: Advance Notice of Proposed Rulemaking and Request for Public Comments, 16 CFR Parts 317 and 318: Mortgage Acts and Practices Rulemaking (Exhibit 6).

4. The case herein and the documentation enclosed relates in part to a complaint filed in 2012 via the Office of RESPA and Interstate Land Sales which was forwarded to the

Federal Office of Comptroller of the Currency (OCC), which forwarded it to the Independent Foreclosure Review (IFR) where it basically was laid down in January 2013 as part of consent agreement ordered with federal banking regulators, the OCC, the Office of Thrift Supervision and the Board of Governors of the Federal Reserve System and several major banks and mortgage servicers, including Wells Fargo. That settlement, however, did not prohibit any additional legal actions and Wells Fargo was one of those who federal regulators sought to require improved customer assistance behavior in wide-ranging foreclosure abuses and improve customer service standards. The company signed on to the agreement with the OCC.

5. Between 2008-2012, Defendant Wells offered Plaintiff multiple loan modifications, solicited and received 12 "trial payments" across three different offers, then later denied the modifications and applied the "trial payments" as late payments on the account and for other unspecified fees. Wells Fargo sent documents with opposing messages within days of each other (Exhibit 7) (Exhibit 8).

6. The complaint is being drafted to highlight the unchanged behavior of Wells Fargo since 2008 and note that in June, 2015, as the result of unchanged behavior, the OCC placed new sanctions on Wells Fargo & Co. for failure to make significant gains in these areas (Exhibit 9).

7. The original complaint in this FDCPA case related to Wells Fargo and their current agents/law firm representatives' failure to reply to point-by-point issues in a Qualified

       Written Request which was sent to them in June 2011 prior to their second of now four foreclosure efforts (Exhibit 10).

8. The company never directly responded to the QWR, which was written by HUD-approved counselor, NACA, the Neighborhood Assistance Corporation of America. Plaintiff has included a copy along with this original complaint.

9. Without citing specific items in written correspondence, Wells asserted that some items requested are considered to be proprietary information of WFHM and would not be provided without subpoena.

10. Representatives of Wells Fargo know or should have known that the Colorado Rule 120 foreclosure process does not allow for the use of subpoenas and uses this unfair debt collection/business practice for foreclosures in Colorado, depriving consumers of due process as safeguarded in the Fifth and Fourteenth Amendments to the U.S. Constitution prohibiting the arbitrary denial of life, liberty or property (Exhibit 11).

11. Several years of Defendant misinformation and re-documentation of lost paperwork are unfortunately typical, but now, however, the problems of Defendant too have moved to more nefarious issues.

12. This includes the hiring of a law firm that fails to follow the rules associated with the FDCPA.

13. After filing a complaint with the Consumer Financial Protection Bureau on June 11, 2015, related to failure of the law firm representing Wells Fargo, McCarthy & Holthus LLP, to respond to a verification request response to that complaint, Wells Fargo now

   claims that the company has assigned no single point of contact as required by federal guidelines and state law (C.R.S. § 38-38-103.1) and their documentation regarding true ownership provided in the CFPB response conflicts with prior assertions of ownership records (Exhibit 12).

14. Wells has claimed numerous different owners of the note. Initially it was an unidentified "investor," which morphed to assignment to Wells Fargo via a Mortgage Electronic Registration Systems (MERS) "representative" on May 3, 2011, allegedly backdated to the date the loan was signed on May 31, 2007. But on December 9, 2011, a Wells "Executive Mortgage Specialist" claimed that Wells was the servicer of the loan and that MERS continues to hold the mortgage lien on behalf of the beneficial note holder and servicers. On June 30, 2015, Wells also provided written documentation claiming Freddie Mac has owned the note since June 18, 2007, (Exhibit 13) and has provided other iterations claiming that the note was still assigned to MERS. Freddie Mac's website says they are the holder of the mortgage as of August 4, 2015. During its initial foreclosure action in 2009, Wells claimed to own the note, though they had no assignment recorded at that time (Exhibit 14).

15. Documents provided to the CFPB from Wells Fargo in July 2015 shows undocumented charges apparently added to the account, including charges for postings of sale last year (when no foreclosure was active) (Exhibit 15).

16. On behalf of the Plaintiff this Law Firm sought (by phone) clarification of the CFPB documents supplied by Wells Fargo after receiving their CFPB response dated June 30, 2015 and spoke to Wells Executive Mortgage Specialist Todd Good (Exhibit 16).

17. Mr. Good supplied the documents to the CFPB and assured Plaintiff's attorney that everything was properly researched and accurate.

18. Details are too extensive to try and put in a brief however, a spreadsheet related to Plaintiff's testimony at a state of Colorado Senate Judiciary Hearing in 2012, outlines the majority of Wells Fargo issues (Exhibit 17).

19. The Office of Comptroller of the Currency labeled the QWR case #02089486 and a response from the OCC Customer Assistance Group on July 10, 2012 said "our office will not be taking further action on your complaint at this time."   The OCC had believed that the Independent Foreclosure Review would address questionable actions.  Plaintiff has since requested that the OCC re-open its case file after providing updated documentation as supplied by Wells. On July 28, 2015, the OCC complied and has launched a new "appeal" investigation under Case #03043132.

20. Consumer Financial Protection Bureau (CFPB) Case #150610-001588 was submitted by Plaintiff on June 10, 2015. This complaint relates to the Fair Debt Collections Practices Act in which the (new, current) law firm representing Wells Fargo, McCarthy and Holthus LLP, failed to provide with any validation to Plaintiff prior to initiating a new foreclosure action in May, 2015, despite documented response to the law firm's letter

within 30 days as the law required (Exhibit 18). The CFPB split the case into a complaint against the law firm, McCarthy and Holthus, LLP and one against Wells Fargo.

21. Plaintiff received undated mail notices from McCarthy & Holthus in early August of 2014 advising Plaintiff that they are serving as debt collectors and will assume the debt to be valid pursuant to the FDCPA and Colorado Fair Debt Collection Practices Act unless Plaintiff respond within 30 days, in which case they will supply to Plaintiff certain documentation verifying the name and address of the original creditor, and other "writing or verification evidencing the debt." Defendant clearly believes it is operating under FDCPA law and would be required to withhold future action until directly providing verification information to Plaintiff (Exhibit 19).

22. Plaintiff never received any verification information and McCarthy & Holthus, which then began to pursue new collection efforts in May, 2015, (Exhibit 20) by filing a Notice of Election and Demand with the Public Trustee in Park County and initiating a foreclosure action. This is both a violation of C.R.S. § 12-14-109 and 15 U.S.C. 1692g – Validation of debts.

23. Defendant McCarthy and Holthus failing to provide an appropriate response to Plaintiff prior to taking further action is a clear FDCPA violation.

24. A written response by McCarthy Holthus lacked the basic information necessary within a validation response.

25. CFPB Case #150611-000047 was submitted June 11, 2015. The CFPB split the case into a complaint against Defendant McCarthy and Holthus and Defendant Wells. This is the

        action which generated the responses from Todd Good representing Wells, raising more questions than resolving them. The CFPB is currently reviewing the dispute.

26. Despite being on notice of representation by counsel in earlier actions, Wells Fargo or contracted employees continued leaving monthly contact door hangers (Exhibit 21) upon Plaintiff's home urging him to contact his mortgage servicer and listed a phone number to call. The number directs to contact Wells Fargo. Counsel for Plaintiff was advised by a counsel for Wells Fargo, and a Wells Fargo representative, that they had no knowledge of anyone authorized to place the notice at home (Exhibit 22) (Exhibit 23). The notices have continued monthly and each notice represents a separate FDCPA violation.

27. The "Communication" is in violation of FDCPA § 805(2). Attorneys notified the previous collection agency via telephone and written correspondence that Obduskey was represented by an attorney. Each "communication" is in violation of this as §805 (2) states the "debt collector can readily ascertain." This is also in violation of C.R.S. § 12-14-105(b).

28. Defendants refuse to abide by their own corporate policies of the law regarding debt collection and ethics. Defendants have been on notice for nearly three years that Plaintiff was represented by legal counsel yet still placed collection documentation upon Plaintiff's door and sent him collection letters.

29. FDCPA § 813 defines "Civil Liabilities" and remedies afforded to the consumer in which Plaintiff is seeking but not limited to the following under this act: a) § 813(1): any actual damage sustained by such person as a result of such failure; b) § 813(2)(a): in the case of

any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 and c) § 813(3): in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the Defendant attorney's fees reasonable in relation to the work expended and costs.

30. Plaintiff has worked in an amicable fashion with each of the three previous law firms Defendant has hired. In each case, foreclosure actions were withdrawn.

31. During the repeated contacts with Plaintiff, Defendants have conducted themselves in a manner which violated the spirit of the FDCPA and the rules of conduct imposed on it and members of its industry. In correspondence to Plaintiffs' counsel on January 18, 2013, Wells represented that the Independent Foreclosure Review process would determine if (Plaintiff) has suffered financial injury as a result of any errors, misrepresentations or other deficiencies in the foreclosure process. (Plaintiff) will then receive a letter with the findings of the review and information about possible compensation and other remedies (Exhibit 24).

32. The Wells representative knew or should have known that on January 7, 2013, Wells and nine other mortgage servicers entered into an agreement which effectively shut down that IFR review process (Exhibit 25).

33. In September 2011, Plaintiff sought the assistance of counsel to deal with the whirlwind of wrongful actions taken place by Wells Fargo.

34. In August, 2014, Plaintiff counsel initially provided information and guidance to Plaintiff regarding the requirement to validate debts and Defendant's counsel have been sent notification of such requirements.

35. They have failed to meet the basic requirements with collections and debt validation.

36. The foregoing acts and omissions were undertaken on behalf of Defendants by its officers, agents or employees acting at all times relevant hereto within the scope of that relationship.

37. Indeed, Defendants' foregoing acts and omissions were undertaken by it indiscriminately and persistently, as part of its regular and routine debt collection efforts, and without regard to or consideration of the identity or rights of Plaintiff or other persons who have been the objects of its collection practices.

38. As a proximate result of Defendants' acts and omissions, Plaintiff has suffered actual damages and injury, including, but not limited to, the cost of his legal defense to the collection actions, damage to his personal credit, extreme mental anguish and suffering, emotional distress, humiliation, and embarrassment, for which he should be compensated in an amount to be proven at trial.

39. The foregoing acts and omissions of Defendants were undertaken by them willfully, maliciously, intentionally, knowingly, or in gross or reckless disregard of the rights of Plaintiff.

40. As a result of the foregoing acts and omissions of Defendants, and in order to punish them for their outrageous and unlawful conduct as well as to deter them from committing

similar acts in the future as part of its debt collection efforts, Plaintiff is entitled to recover punitive damages in an amount to be proven at trial.

41. Plaintiff therefore seeks to recover actual, statutory, treble, and punitive damages on behalf of himself as well as declaratory relief together with reasonable attorneys' fees and costs.

## JURISDICTION

1. Jurisdiction of this Court attains pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and the doctrine of pendent jurisdiction.

## PARTIES

2. Plaintiff is an individual over the age of 18 who resides in Bailey, Colorado

3. Defendant Wells Fargo Bank, Wells Fargo & Co., Wells Fargo Bank NA, Wells Fargo Home Mortgage ("Wells"), 101 N. Phillips Avenue, Sioux Falls, SD 57104, United States is an American multinational banking and financial services holding company which, at all times relevant herein, was licensed to do business and was conducting business in the State of Colorado. Wells Fargo is engaged in the business of banking, mortgage lending, mortgage servicing, debt collecting and operating a debt collection agency from its principal place of business in 101 N. Phillips Avenue, Sioux Falls, SD 57104, United States, Wells Fargo has a registered agent within the state of Colorado at 1560 Broadway, Ste. 2090, Denver, CO 80202, United States and regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is considered a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendant has also

stated in writing that as a loan servicer, they are required by the FDCPA to advise they are attempting to collect a debt.

4. Defendant McCarthy and Holthus, LLP is a multi-state law firm and limited liability partnership licensed to conduct business in the State of Colorado. McCarthy and Holthus is engaged in the business of litigation, debt collecting, operating a debt collection agency from its principal place of business in Centennial, Colorado, and regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6). Defendants have stated in writing they are subject to the FDCPA in documents mailed to Plaintiff and would follow FDCPA rules and regulations.

5. At all times mentioned herein, each Defendant was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment. The Defendants are jointly and severally liable to Plaintiff.

## CAUSES OF ACTION

## COUNT I

## UNFAIR DEBT COLLECTION PRACTICES

## (WELLS FARGO & MCCARTHY HOLTHUS)

6. The foregoing combined acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to sections 1692(c) (communicating with third party), 1692(d) (harassment or abuse), 1692(e) (false or misleading representations), 1692(f) (unfair practices), and 1692(g) (validation of debts).

7.  Furthermore there is a clear violation of the following: 15 USC 1692(g) § 809(a) and (b): (1) failure to respond to a properly delivered notice requesting debt validation, (2) ignoring valid written request related to verification of the debt and continue to collect, and (3) continue to collect on debt before providing verification

8.  Plaintiff set forth in each of his letters that he sought a response to be sent to his personal address.

9.  Defendant did not communicate information regarding this alleged debt to Plaintiff despite his specific request within 30 days of receiving notice, as required by state and federal law.

10. Defendant's conduct was intentionally meant to harass and abuse Plaintiff in an effort to make him pay the alleged debt.

11. Defendant's statements and actions gave the false representation of Plaintiff's legal obligation for the alleged debt.

12. Defendant's actions represent its overly aggressive policy of collecting money from debtors at all costs, to include disregarding established rules and regulations provided by the Colorado State Legislature and its administrative bodies.

13. The Fair Credit Reporting Act also provides for civil liability for violation of the Act's provisions 15 U.S.C.A. § 1681(n) and U.S.C.A. § 1681(o).

14. Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs.

## COUNT II

## UNFAIR AND DECEPTIVE TRADE PRACTICE

## (WELLS FARGO & MCCARTHY HOLTHUS)

15. Plaintiff incorporates all previous paragraph provided herein

16. The foregoing acts and omissions constitute a deceptive trade practices made unlawful pursuant to C.R.S. § 6-1-105.

17. Defendant engages in these underhanded measures in an effort to increase revenues and to obtain a competitive edge in the debt collection industry.

18. Examination of the accounting spreadsheets show the numerous fees that have been added to the original loan, but there is a complete failure regarding the explanation of such fees and actions.

19. Plaintiff is entitled to recover his actual damages, his actual damages trebled, plus reasonable attorney's fees and costs.

## COUNT III

## DEFAMATION

## (WELLS FARGO & MCCARTHY HOLTHUS)

20. Plaintiff incorporates all previous paragraphs provided herein.

21. The foregoing acts and omissions constitute libel per quod.

22. Pursuant to the Fair Credit Reporting Act, 15 U.S.C.A. § 1681s-2(a), the furnisher of information to consumer reporting agencies has a duty to provide accurate information about a consumer's credit file.

23. Defendant Wells Fargo directed their legal counsel to file a civil action for the foreclosure of a home which became a matter of public record.

24. The foreclosure was printed in local publications within the state of Colorado

25. Defendant also caused derogatory information to be placed on Plaintiff's personal credit report. Defendant falsely reports to credit bureaus that "dispute resolved; customer disagrees," when no dispute was ever resolved.

26. Defendant did these actions deliberately and with knowledge or reckless disregard for the truth or falsity of its allegations.

27. Defendant did so to deliberately cause damage to Plaintiff's reputation.

28. Plaintiff is entitled to recover his actual damages, his actual damages trebled, plus reasonable attorney's fees and costs.

## COUNT IV

## EXTREME AND OUTRAGEOUS CONDUCT - EMOTIONAL DISTRESS

## (WELLS FARGO & MCCARTHY HOLTHUS)

29. Plaintiff incorporates all previous paragraphs provided herein.

30. The Defendants actions have created anxiety and numerous sleepless nights for Plaintiff.

31. Plaintiff has attempted to amicable with Defendant Wells Fargo and had made gains regarding possible settlement in the past.

32. As Defendant Wells Fargo hired new law firms to initiate foreclosure actions the progress of stipulation and settlement has been lost. Plaintiff has been forced to deal with three law firms regarding the debt.

33. Furthermore Plaintiff recently discovered that the Defendant Wells Fargo has failed to provide accurate information pertaining to the current note holder of such loan.

34. Defendants engaged in the conduct recklessly or with the intent of causing Plaintiff suffer distress.

35. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff suffered severe mental distress, mental suffering, or mental anguish, including fright, nervousness, grief, anxiety, worry, humiliation, and indignity.

36. As a proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined according to proof.

37. Defendants acted with oppression, fraud or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof.

### COUNT V

### COMMENCEMENT OF UNLAWFUL COLLECTIONS ACTION

### (WELLS FARGO & MCCARTHY HOLTHUS)

38. In a letter dated June 5, 2009, Plaintiff was advised by Wells Fargo Home Mortgage that he was in default on loan 0205097832, that the entire balance was due and payable, and they had instructed their law firm to initiate foreclosure proceedings. This is known as an acceleration letter. (Exhibit 26)

39. Defendant and such agents filed a Notice of Election and Demand ("NED") with Park County on July 10, 2009, which also effectively accelerated the amount due. (Exhibit 27)

40. Colorado Foreclosure statutes 38-38-100 through 38-38-114 show that two distinctly separate steps are required in a simplified foreclosure: (1) filing of the NED in an administrative action putting the public on notice that a foreclosure process is taking place, and (2) a separate, required court action filed by the law firm representing the holder of evidence of debt, called a Rule 120 Hearing, to seek a court "Order Authorizing Sale."

41. Pursuant to C.R.S. § 13-80-103.5, an action to recover a liquidated or un-liquidated debt, or determinable amount of money due to the person bringing the action, shall be commenced within six years after the cause of action accrues and not thereafter.

42. As discussed in *Hassler v. Account Brokers of Larimer County, Inc.*, 274 P.3d 547, 549 (Colo. 2012), the court concluded that once an installment security agreement is validly accelerated, the entirety of the remaining balance becomes due and therefore the cause of action to collect the entire debt accrues.

43. Pursuant to the Colorado Rules of Civil Procedure, Rule 3 states that, "a civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons and complaint.

44. Defendant's filing of a new NED on May 12, 2015 with Park County does not satisfy the requirements under the C.R.C.P. to commence a civil action, as the complaint was not filed with a court.

45. Any attempts by Defendant to now file a Rule 120 action is barred by the six-year statute of limitations and as of the date herein Defendant has still not filed with the court. The cause of action to collect the debt accrued June 5, 2009, with the acceleration letter sent to Plaintiff by Wells Fargo Home Mortgage, followed by initiating a foreclosure action the following month.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

1. For compensatory damages;
2. For statutory damages;
3. For punitive damages;
4. For pre-judgment interest to the extent permitted by law;
5. For an award of attorneys' fees, costs and expenses incurred in bringing this action;
6. For injunctive relief, restitution, and disgorgement of ill-gotten gains; and for requirement that any pending foreclosure actions be immediately withdrawn;
7. For the investigation, filing and prosecution of this action; and
8. For such other and further relief as the Court may deem just and proper
9. That on behalf of all residents subjected to the Rule 120 Foreclosure process and the Debt Collection Process in Colorado that the Federal Court review and determine that the practices used violates due process for all effected citizens.

Respectfully submitted this 12th day of August, 2015,

*/s/ Steven L. Hill*
Steven L. Hill, Esq.
Riggs, Abney, Neal, Turpen, Orbison & Lewis, P.C.
50 S. Steele St, Suite 600
Denver, CO 80209
Phone: 303-298-7392
Fax: 303-298-7398
shill@riggsabney.com