**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:15-cv-01734-RBJ

DENNIS OBDUSKEY, an individual,

    Plaintiff,

v.

WELLS FARGO, WELLS FARGO BANK,
WELLS FARGO & CO., WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE, and
MCCARTHY AND HOLTHUS LLP,

    Defendant.

___

### WELLS FARGO BANK, N.A.'S MOTION TO DISMISS
___

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), also improperly named as Wells Fargo, Wells Fargo Bank, Wells Fargo & Co., and Wells Fargo Home Mortgage, moves to dismiss the Complaint with prejudice under Fed. R. Civ. P. 12(b)(6).

### INTRODUCTION

Plaintiff asserts various claims based on a loan he took in 2007. He defaulted in 2009, and attempted unsuccessfully to modify the loan several times. While Plaintiff staved off foreclosure this long by making payments toward temporary modification plans, he remains in default, and Wells Fargo has begun non-judicial foreclosure proceedings. Hence this lawsuit. But Plaintiff cannot bring an unfair debt collection claim because Wells Fargo is not a debt collector and a non-judicial foreclosure is not a debt collection. Because Plaintiff has not pled any facts suggesting that Wells Fargo did anything deceptive, false, or outrageous, his other statutory and tort claims—deceptive trade practices, defamation, and extreme and outrageous

1

conduct—fail as well. Nor can the majority of Wells Fargo's alleged misconduct support a claim, as most of the misconduct alleged occurred outside the statute of limitations. Thus, Wells Fargo requests that this Court dismiss Plaintiff's claims.

## BACKGROUND

In May 2007, Plaintiff obtained a loan from Magnus Financial Corporation for $329,940, secured by his property in Bailey, Colorado. Shortly thereafter, Freddie Mac acquired the loan. Wells Fargo services the loan on behalf of Freddie Mac. (Dkt. 1, Exs. 12, 16.) In 2008, Plaintiff received an offer to apply for a loan modification. Wells Fargo sent him the loan modification paperwork in January 2009, but Plaintiff did not sign and return the correct paperwork, so Wells Fargo did not modify the loan. (*Id.*, Ex. 5.) Plaintiff defaulted on the loan on June 1, 2009. (*Id.*, Exs. 5, 12, 16, 24, 26.) Wells Fargo then initiated non-judicial foreclosure proceedings pursuant to the Deed of Trust. (*Id.*, Ex. 27.) In the meantime, Plaintiff was approved for successive Home Affordable Modification Program ("HAMP") Loan Trial Period, although none resulted in permanent modifications. (*Id.*, Ex. 5.) The loan has never been modified, and Wells Fargo has not yet completed the foreclosure proceedings. Plaintiff's loan remains in default. (*Id.*, Ex. 12.)

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must state "sufficient factual matter, accepted as true" to state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To state a claim, factual allegations must be enough to "raise a right to relieve above the speculative level." *Id.* Legal conclusions in a pleading are not entitled to an

assumption of truth. *Iqbal*, 556 U.S. at 679-80. Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

## ARGUMENT

Plaintiff asserts five causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. §6-1-105; (3) defamation; (4) extreme and outrageous conduct; and (5) commencement of an unlawful collections action. (Dkt. 1.) As set forth below, each claim fails.

### I.     PLAINTIFF'S FDCPA CLAIM FAILS.

Count I alleges that Wells Fargo violated the FDCPA, 15 U.S.C. § 1692 *et seq.*, "including, but not limited to" the following provisions: communications with third parties (§ 1692c), harassment or abuse (§ 1692d), false or misleading representations (§ 1692e), unfair practices (§ 1692f), and validation of debts (§ 1692g). Plaintiff has not and cannot state a claim under any of these provisions. Count I should therefore be dismissed.

#### A.     Wells Fargo Is Not a Debt Collector Under the FDCPA.

The FDCPA only applies to "debt collectors." 15 U.S.C. § 1692. However, a "debt collector" excludes "any person collecting or attempting to collect any debt … which was not in default at the time it was obtained by such person." *Id*. at § 1692a(6)(F). Thus, loan servicers, like Wells Fargo, are not debt collectors under the FDCPA if the plaintiff defaults on the loan after it is transferred to the loan servicer. *See Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210, 1231 (D. Colo. 2011) *aff'd in part* 711 F.3d 1173 (10th Cir. 2013).

Wells Fargo began servicing Plaintiff's loan in 2007. (Dkt. 1, Ex. 12.) Plaintiff does not allege he was in default at that time. To the contrary, Plaintiff alleges he "has been dealing with

3

Wells Fargo" since 2008 and defaulted on June 1, 2009. (*Id.*, Exs. 5, 12, 16, 24, 26.) Because Plaintiff's loan was not in default when Wells Fargo began servicing it, Wells Fargo is not a debt collector within the meaning of the FDCPA. *See, e.g.*, *Garrett v. BNC Mortgage, Inc.*, 929 F. Supp. 2d 1120, 1128 (D. Colo. 2013); *Schwitzer v. Wells Fargo Bank, N.A.*, No. 12-CV-01367-RBJ-MJW, 2013 WL 607832, at *5 (D. Colo. Feb. 19, 2013).[1]

### B. Wells Fargo Was Not Collecting a Debt Under the FDCPA.

Plaintiff's FDCPA claim also fails because a non-judicial foreclosure, like the proceeding here, is not a debt collection within the meaning of the FDCPA. *See Schwitzer*, 2013 WL 607832, at *5 (adopting the majority view that non-judicial foreclosures fall outside the scope of the FDCPA); *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1354 (D. Utah 2009) ("A non-judicial foreclosure is not the collection of a debt under the FDCPA") (citing cases).[2]

### C. The Allegations Do Not Support an FDCPA Violation.

Plaintiff has not adequately pled facts supporting an FDCPA violation. The FDCPA contains 17 separate statutes, most with several subsections. Given its complexity, to state a claim for a violation of the FDCPA, a plaintiff must plead: (a) the specific subsection of the FDCPA the defendant violated, and (b) how the defendant allegedly violated those subsections. *See, e.g., Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1199 (D. Colo. 2015); *Ramsey v. Citimortgage*, No. 10-CV-02653-WYD-CBS, 2010 WL 4511099, at * 3 (D. Colo. Nov. 2, 2010).

Applying these standards, the Complaint is deficient on its face. Plaintiff generally alleges that Wells Fargo's "combined acts and omissions" violate "the FDCPA, including, but

---

[1] To the extent Plaintiff also alleges that Wells Fargo violated Colorado's version of the FDCPA, those claims fail for the same reason. *See Garrett*, 929 F. Supp. 2d at 1128.

[2] The Tenth Circuit has not ruled on the issue of whether non-judicial foreclosures are covered by the FDCPA. *See, e.g., Llewellyn*, 711 F.3d at 1189.

not limited to" sections 1692c, 1692d, 1692e, 1692f and 1692g. (Dkt. 1, p. 12, ¶ 6.) Plaintiff thus has not identified which specific provisions of the FDCPA Wells Fargo allegedly violated, or how Wells Fargo violated each section. Instead, Plaintiff merely recites elements of the claims in a conclusory manner. (*Id.*, p. 13, ¶¶ 10-12.) Thus, Plaintiff has not stated a claim under the FDCPA *See, e.g.*, *Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F. Supp. 2d 753, 769–70 (E.D. Pa. 2012) (a plaintiff fails to state a claim under the FDCPA by "propounding a mass of factual allegations and then enumerating a laundry list of statutory provisions that a defendant allegedly violated").

Plaintiff alleges that Wells Fargo violated 15 U.S.C. § 1692c (communication with third parties), but he does not identify what "third parties" Wells Fargo communicated with in violation of the FDCPA, when, or how.[3] Likewise, the Complaint is devoid of factual allegations supporting the conclusory statements that Wells Fargo harassed and abused Plaintiff,[4] Wells Fargo made a "false representation" regarding Plaintiff's debt, or Wells Fargo employed an "overly aggressive policy" of collecting debts. Accordingly, Plaintiff has not stated a claim for violations of 15 U.S.C. §§ 1692d (harassment or abuse), 1692e (false or misleading representations) or 1692f (unfair practices).

Finally, Plaintiff has not pled a claim under 15 U.S.C. § 1692g (validation of debts). Plaintiff appears to allege that Wells Fargo did not respond to Plaintiff's August 19, 2014 debt

---

[3] To the extent Plaintiff alleges Wells Fargo improperly communicated with his attorney, rather than with him, Plaintiff *directed* Wells Fargo to do so. (*Compare* Dkt. 1, p. 13, ¶ 8 *with* Ex. 18.)
[4] Plaintiff's allegations regarding notices left on his door do not give rise to a violation of 15 U.S.C. § 1692d. First, the notices were posted in 2013. (Dkt. 1, Exs. 21, 22, 23.) Thus, any claims based on these actions are time barred. 15 U.S.C. § 1692k(d). Second, the notices were not an attempt to collect debt, but were property inspection notices. (Dkt. 1, Ex. 16.) The notices themselves do not reference collecting a debt. (*Id*. Exs. 21, 22, 23.)

validation request. (Dkt. 1, p. 13, ¶ 9.) But Wells Fargo *did* respond according to the attachments to the Complaint: first, on October 2, 2014, and then again on June 30, 2015.[5] (*Id.*, Ex. 16.) Plaintiff's allegations that contradict the attachments to his pleading should not be accepted as true. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (courts need not accept as true legal conclusions and factual allegations that are contradicted by properly considered documents). Accordingly, Plaintiff has not stated a claim under § 1692g either.

### D. The FDCPA Claim Is Untimely.

FDCPA claims are subject to a one year statute of limitations, accruing from the date the violation occurs. 15 U.S.C. § 1692k(d). Plaintiff's complaint primarily focuses on historical events dating back to 2008. Events occurring before August 12, 2014, however, are not timely in the context of Plaintiff's FDCPA claim, and Plaintiff has not alleged any facts supporting violations of the FDPCA that occurred on or after August 13, 2014. For this additional reason, the Court should dismiss Count I of the Complaint.

## II. PLAINTIFF'S CCPA CLAIM FAILS.

Plaintiff's CCPA claim should be dismissed because: (1) Plaintiff does not explain what alleged conduct underlies this claim; (2) the alleged conduct does not amount to a deceptive trade practice, and Plaintiff's allegations that Wells Fargo misrepresented the true owner of the note are belied by his own documents; (3) the bulk of the alleged misrepresentations are barred by the statute of limitations; (4) any claim based on the alleged misrepresentations since that

---

[5] Plaintiff does not allege that Wells Fargo's responses were inadequate under § 1692g or how Wells Fargo otherwise violated this provision.

time are barred by the Credit Agreement Statute of Frauds, C.R.S. § 38-10-124; and (5) there is no public impact alleged, nor can there be in the context of these claims.

First, to prevail on a CCPA claim, Plaintiff must allege and later prove five elements:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.

*Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 434–35 (Colo. App. 2006). But the Complaint does not explain what conduct forms the basis of Plaintiff's CCPA claim, why it was unfair or deceptive, how it impacted the public, or how it caused Plaintiff to suffer any harm—nor is there even a "bare legal conclusion" as to public impact or causation. *See, e.g.*, *Owens v. Nationstar Mortg. LLC*, No. 14-cv-01434-PAB-KLM, 2015 WL 1345536, at *4 (D. Colo. Mar. 23, 2015) (dismissing CCPA claim). Instead, Plaintiff alleges merely that "[t]he foregoing acts and omissions constitute [] deceptive trade practices made unlawful [by the CCPA]." (Dkt. 1, p. 14, ¶ 16.) But such a "conclusory allegation" does not state a claim. *Owens*, 2015 WL 1345536, at *4. Nor do the "numerous fees" Wells Fargo allegedly charged without explanation constitute a deceptive trade practice. (Dkt. 1, p. 14, ¶ 18). The fees—which appear to be for attorney fees, filing costs, clerk costs, post-sale notices and a title policy (Dkt. 1, Ex. 15)[6]—are proper under Colorado law, particularly here where Plaintiff concedes Wells Fargo started a foreclosure action due to his nonpayment. *See In re Dennis*, No. 12-28423 MER, 2013 WL 593690, at *3 (Bankr. D. Colo. Feb. 15, 2013) ("[w]hen a foreclosure has been filed, Colorado statutory law indicates the cure amount may include such items as late charges,

---

[6] The spreadsheet is difficult to read, but it appears only $3,751.24 in fees are at issue.

attorneys' fees, and other costs"); *see also* C.R.S. § 38-38-107(3)(b)(I), (III), (VI) (allowing as recoverable fees and costs "reasonable attorney fees and the costs incurred by the holder," including title insurance premiums, notice costs, and court costs).

Second, the CCPA defines "deceptive trade practice" and enumerates situations that are deceptive, most of which relate to false advertising or misrepresenting the quality, nature, affiliation, or ownership of certain goods or services. *See* C.R.S. § 6-1-105. Yet, there is no nexus between the conduct alleged in the Complaint and the enumerated categories of deceptive trade practices. Without an allegation that Wells Fargo's conduct fits one of those specific categories, Plaintiff's claim fails. *See, e.g.*, *Coors v. Sec. Life of Denver Ins. Co.*, 91 P.3d 393, 400–01 (Colo. App. 2003), *rev'd in part on other grounds*, 112 P.3d 59 (Colo. 2005).

To the extent the claim is based on the alleged misrepresentation of the "true owner of the note" (Dkt. 1, p. 5, ¶ 14), this does not fit within the enumerated categories of deceptive trade practices. Further, it is belied by the exhibits attached to the Complaint. For example, on December 9, 2011, Wells Fargo informed Plaintiff that it was the servicer on the loan, and that Mortgage Electronic Registration Systems ("MERS") held the title on behalf of the note holder. (*Id.*, Ex. 5.) According to the exhibits attached to the Complaint, Wells Fargo disclosed its status as the servicer on behalf of Freddie Mac, the loan investor, on numerous occasions. (*See id.*, Exs. 12, 13, 16. 20, 24, 27.) So too did Wells Fargo explain MERS's status. (*See id.*, Exs. 14, 16, 20, 27.) Far from misrepresenting anything, these statements are perfectly consistent: Wells Fargo is the servicer, Freddie Mac is the investor, and MERS is the beneficiary as nominee for

the lender and its successors and assigns.[7] These allegations and the attachments to the Complaint refute the existence of any deceptive trade practice. *See, e.g.*, *Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1250–51 (D. Colo. 2011); *see also Frane v. JP Morgan Chase Bank, N.A.*, No. 12-cv-00821-RM-BNB, 2015 WL 4606537 (D. Colo. Aug. 3, 2015).

Third, to the extent the CCPA claim is based on alleged misrepresentations that took place before August 12, 2012 (such as early attempts to modify the loan), they are barred by the three-year statute of limitations. *See* C.R.S. § 6-1-115.

Fourth, to the extent the CCPA claim is based on any unwritten or unsigned representations to lend or modify the loan—those representations involve "credit agreements," and claims based upon them are barred by the Credit Agreement Statute of Frauds. *See, e.g.*, *Wagner v. Universal Financial Group, Inc.*, No. 09-cv-00038-PAB-BNB, 2010 WL 866079, at *3–6 (D. Colo. Mar. 5, 2010). For the statute of frauds to bar Plaintiff's claims, (1) Plaintiff must be a debtor, (2) Wells Fargo must be a creditor, and (3) the claim must relate to a credit agreement of more than $25,000. *Id.* Plaintiff is plainly a "debtor" because he is obligated on the note. *See* C.R.S. § 38-10-124(1)(c). Similarly, Wells Fargo is a "creditor" because it assumed the position of the original lender who extended credit to Plaintiff under the original loan agreement, it modified the credit terms through the HAMP trial periods, and it offered to extend credit to Plaintiff under the proposed loan modification agreement in January 2009. *See* C.R.S. § 38-10-124(1)(b). The CCPA claim relates to a credit agreement above $25,000, as it relates to the oral representation of loan and modification terms, and is thus related to "a

---

[7] Nor has Plaintiff plausibly asserted how he has been damaged by these statements, as he continues to owe the debt to Wells Fargo as the loan servicer, and Wells Fargo, as the loan servicer, has the right to foreclose on the property that serves as the collateral for the debt.

contract, promise, undertaking, offer, or commitment to lend, borrow, repay or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation." *See* C.R.S. § 38-10-124(1)(a)(I)-(III). Thus, as the CCPA claim is based on attempted or completed loan modification transactions, it is barred by the statute of frauds.

Fifth, the CCPA claim fails because a claimant must prove, among other things, that the deceptive trade practice "significantly impact[s] the public as actual or potential consumers." *Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998). Thus, the standard use of CCPA claims is where there is widespread, advertised fraud that may affect the public. "[A] CCPA claim is not actionable if it pertains to private conduct that does not affect the public." *Van Rees v. Unleaded Software, Inc.*, --- P.3d ----, 2013 COA 164, ¶ 39 (Colo. App. 2013).

> Three factors must be considered in determining public impact: '(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.'"

*Colorado Coffee Bean LLC v. Peaberry Coffee, Inc.*, 251 P.3d 9, 25 (Colo. App. 2010) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003)). While it is impossible to determine what facts support Plaintiff's CCPA claim, none of the facts alleged in the Complaint impact any member of the public aside from Plaintiff. There is no plausible allegation of a deceptive trade practice at all, let alone one that Wells Fargo has perpetrated on anyone but Plaintiff. *See, e.g.*, *Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009). The CCPA was not designed to become a statutory version of common-law fraud. Because there is no significant impact to the public alleged, nor could there be on in this situation, the CCPA claim fails.

### III.     PLAINTIFF'S DEFAMATION CLAIM FAILS.

Count III of the Complaint purports to state a defamation claim based on two theories: (1) false credit reporting; and (2) filing documents related to the foreclosure. Plaintiff has not stated a claim for defamation under either theory.

Colorado's one year statute of limitations bars Plaintiff's claim arising from statements on his credit report. C.R.S. § 13-80-103(1)(a). Plaintiff has been on notice since January 18, 2013 that Wells Fargo reported that the account information was "disputed." (Dkt. 1, Ex. 24.) Plaintiff's defamation claim is thus untimely. Additionally, Wells Fargo's reporting was not false. *See Frye v. Lee*, --- P.3d ---, 2013 COA 100, ¶ 20 (Colo. App. 2013) (defamation claims require "publication of a false statement of a defamatory nature"). Plaintiff alleges that Wells Fargo reported "dispute resolved; customer disagrees." (Dkt. 1, p. 15, ¶ 25.) This is not a false statement because the statement refers to Wells Fargo's resolution of its investigation of the credit dispute, and Plaintiff does not contend that he "agrees" with Wells Fargo's resolution of that dispute. To the contrary, he does "disagree."

Likewise, Wells Fargo's statements on notices related to the foreclosure are not false. (*Id.* Ex. 20.) First, the foreclosure proceedings were initiated in 2009. (Dkt. 1, Exs. 14, 27.) Thus, any defamation claims arising from the 2009 notices are barred by the one year statute of limitations. C.R.S. § 13-80-103. Second, Plaintiff does not deny that he has been in default since June 1, 2009, so the statements are not false. Third, the notice states that the foreclosure is proceeding pursuant to the Deed of Trust. Plaintiff does not allege that Wells Fargo lacked the right to foreclose under the Deed of Trust, and did not. Consequently, nothing in the foreclosure notice is false, and no defamation claim arises from the recording of these documents.

## IV. PLAINTIFF'S EXTREME AND OUTRAGEOUS CONDUCT CLAIM FAILS.

Plaintiff's extreme and outrageous conduct claim—sometimes called intentional infliction of emotional distress—is based on two theories: (1) that Plaintiff "has been forced to deal with three law firms regarding the debt"; and (2) Wells Fargo "failed to provide accurate information pertaining to the current note holder." (Dkt. 1 at 15–16.) His claim fails because he has not identified any conduct by Wells Fargo that could be deemed extreme or outrageous. The claim also fails because Plaintiff's second theory is plainly false based on the documents attached to the Complaint. (*See* Section II, *supra*.)[8]

To succeed on this claim, Plaintiff must allege facts supporting the following: "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) causing the plaintiff severe emotional distress." *Llewellyn*, 795 F. Supp. 2d at 1229. The bar for extreme and outrageous conduct is high. *Id.* Here, the allegations themselves, even if true, show nothing extreme or outrageous.

"Outrageous conduct" is defined as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). The tort requires proof of an "extreme act, both in character and degree" or a pattern of conduct showing the "infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994). It often comes with knowledge that a plaintiff is "particularly susceptible

---

[8] And as with other claims, this claim fails because it is untimely under the two-year statute of limitations. *See* C.R.S. §13-80-102; *Jacobs v. Ocwen Loan Serv., LLC*, No. 13-cv-02518-REB-BNB, 2014 WL 3893357, at *13-15 (D. Colo. June 16, 2014), *adopted by* 2014 WL 3893325, at * 3 (D. Colo. Aug. 7, 2014) (emotional distress claim barred by two-year limitations period).

to emotional distress." *Stich v. BAC Home Loans Servicing, LP*, No. 10-cv-01106-CMA-MEH, 2012 WL 619241, at * 6 (D. Colo. Feb. 27, 2012).

> Courts routinely hold that conduct related to foreclosure proceedings is not outrageous:
>
> It was neither extreme nor outrageous for an entity possessing and filing the requisite documentation under Colorado law to institute foreclosure proceedings on borrowers in default.  Nor was it extreme or outrageous for defendant to post the notice on plaintiffs' front door, which . . . serves the purpose of providing notice to any occupants of action that will be taken to preserve the property.

*Mbaku v. Bank of Am., N.A.*, No. 12-cv-00190-PAB-KLM, 2013 WL 425981, at *8 (D. Colo. Feb. 1, 2013).  Accordingly, Colorado courts regularly dismiss outrageous conduct claims by borrowers against mortgagees or servicers.  *See, e.g.*, *Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291943, at *18-19 (D. Colo. June 17, 2013), *rejected in part on other grounds*, 2013 WL 5291947 (D. Colo. Sept. 18, 2013) (alleged misconduct not outrageous enough to support claim despite the "inconvenience, pain, and suffering the threat of losing their home may have caused"); *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1043–44 (D. Colo. 2012) (the alleged conduct "does not plausibly rise to the level of 'extreme or outrageous' conduct actionable under the tort."); *Hewitt v. Pitkin County Bank & Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995) (allegations that a bank "accepted loan payments from him and then reneged on its promise not to commence foreclosure proceedings against him, and instead commenced such proceedings the very next day" could not support outrageous conduct claim).

Because it cannot reasonably be stated that changing counsel, or failing to disclose Freddie Mac's involvement in the loan, is so outrageous as to be "atrocious" and "utterly intolerable in a civilized society," this claim should be dismissed.

## V.      PLAINTIFF'S UNLAWFUL COLLECTIONS ACTION CLAIM FAILS.

Count V alleges Wells Fargo commenced unlawful collections actions. This claim is based on the incorrect theory that foreclosures are an action to collect a debt and is subject to Colorado's 6 year statute of limitations. They are not. Foreclosures are governed by the specific 15 year statute of limitations in C.R.S. § 38-39-205, rather than the 6 year general debt collection statute of limitations in C.R.S. § 13-80-103.5. *See, e.g., Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1179 (Colo. 2003).

Further, assuming *arguendo* the six-year limitations period applies, Plaintiff's voluntary payments during the HAMP trial periods tolled the statute of limitations. *Drake v. Tyner*, 914 P.2d 519, 522 (Colo. App. 1996) (partial payment is a "voluntary acknowledgment of the debt from which the law implies a new promise to pay the balance"). Here, Plaintiff not only admits he made partial payments, but the HAMP documents expressly acknowledge the debt, as well as Wells Fargo's right to continue the foreclosure action upon conclusion of the trial period. (Dkt. 1, p. 3, ¶ 5; Ex. 8, §§ 2(B), 2(E), 4(B), 4(D)). Consequently, even if the six-year limitation applies, it began no earlier than October 1, 2011, and the foreclosure action is timely.

Nevertheless, the foreclosure proceeding was timely initiated in May 2015 even under Plaintiff's incorrect theory. Plaintiff asserts that the Notice of Election and Demand ("NED") recorded on May 12, 2015 was not an "action" because no complaint was filed, and thus any Rule 120 hearing is now untimely because it was not held within six years of the cause of action accruing in June 2009. (Dkt, 1, pp. 16-18, ¶¶ 38-45.) Foreclosures are governed by statute and initiated by filing and recording an NED, not a complaint. C.R.S. §§ 38-38-101(1)(a), 38-38-102. To the extent the court is involved, the note holder must obtain an Order Authorizing Sale

pursuant to Rule 120 of the Colorado Rules of Civil Procedure by filing a verified motion, followed by a hearing.  C.R.S. § 38-38-105(2)(a); C.R.C.P. 120(a), (d).[9]

## VI.     PLAINTIFF'S OTHER CLAIMS FAIL.

The Complaint includes a host of additional allegations that do not appear to support any of the enumerated causes of action, nor could they.  For example, the Complaint alleges that Wells Fargo did not timely respond to Plaintiff's June 15, 2011 Qualified Written Response ("QWR").  (Dkt. 1, pp. 3-4, ¶¶ 7-10.)  Wells Fargo denies this allegation.  Regardless, Plaintiff has not pled any claim under the Real Estate Settlement Procedures Act ("RESPA") from which QWR response obligations arise, and any claim would be barred by the three year statute of limitations anyway.  12 U.S.C. § 2614.  Nor has Plaintiff alleged any damages arising from this theory.  *See Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1145–46 (D. Colo. 2013).

## CONCLUSION

For these reasons, Wells Fargo requests that this Court dismiss each of Plaintiff's claims with prejudice.

DATED: September 29, 2015.

        SNELL & WILMER L.L.P.

By:  *s/ Christopher J.L. Diedrich*
     Christopher J.L. Diedrich
     1200 17th Street, Suite 1900
     Denver, Colorado 80202
     Telephone:  (303) 634-2000
     cdiedrich@swlaw.com

***Attorneys for Defendant Wells Fargo Bank, N.A.***

---

[9] Rule 120 hearings are limited in scope to the existence of the default; they are not adversarial and do not give rise to an appealable or final judgment. C.R.C.P. 120(d); *Mackall v. JPMorgan Chase Bank, N.A.*, --- P.3d ---, 2014 COA 120, ¶ 36.

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2015, a true and correct copy of the foregoing **MOTION TO DISMISS** was filed and served electronically through this Court's CM/ECF system or served via U.S. Mail, first class postage prepaid, upon the following:

| | |
|---|---|
| Steven L. Hill, Esq. | Holly R. Shilliday, Esq. |
| RIGGS, ABNEY, NEAL, TURPEN, | McCarthy Holthus, LLP |
| ORBISON & LEWIS, P.C. | 7700 E. Arapahoe Road, Suite 230 |
| 50 S. Steele St, Suite 600 | Centennial, Colorado 80112 |
| Denver, Colorado 80209 | Telephone: 303.952.6905 |
| Telephone: 303.298.7392 | Fax: 866.894.7369 |
| Fax: 303.298.7398 | E-mail: hshilliday@mccarthyholthus.com |
| E-mail: shill@riggsabney.com | |

*Attorneys for Plaintiff*

/s/ *Pamela Thede*
for Snell & Wilmer, LLP

22531199