

**PRESS RELEASE**
Colorado Department of Law
Attorney General John W. Suthers

**FOR IMMEDIATE RELEASE**
July 16, 2014

**CONTACT**
Carolyn A. Tyler
Carolyn.Tyler@state.co.us
720-508-6553

## ATTORNEY GENERAL CHARGES COLORADO'S LARGEST FORECLOSURE LAW FIRMS WITH FRAUD

*$13 Million Settlement with Aronowitz & Mecklenburg Secured*

**DENVER** — Colorado Attorney General John Suthers today announced the filing of civil law enforcement actions against the two largest foreclosure law firms in Colorado. In separate filings, the Attorney General's Consumer Protection Section charged The Castle Law Group, its principals and affiliated foreclosure-related businesses, as well as Aronowitz & Mecklenburg, its principals and affiliated foreclosure-related businesses with violating the Colorado Consumer Protection Act, the Colorado Antitrust Act, and the Colorado Fair Debt Collection Practices Act. The Attorney General filed a simultaneous proposed Final Consent Judgment settling the case against the Aronowitz defendants.

"These lawsuits come at the end of a lengthy and exhaustive investigation into allegedly fraudulent billing practices by these firms that inflated foreclosure costs," said Attorney General John Suthers. "These inflated costs were passed on to homeowners trying to save their homes from foreclosure, successful bidders for properties at foreclosure sales, and to investors and taxpayers. The facts uncovered by our investigation are very disturbing and, frankly, reflect poorly on the legal profession."

The complaints, filed in Denver District Court, allege that these law firms, and their principals, conspired to charge fraudulent and inflated costs for posting of two statutorily-mandated notices on the homes of borrower's facing foreclosure, and used affiliated companies to run up the costs of title products used in the foreclosures. The complaints also allege that these firms improperly and deceptively

EXHIBIT - 4

## Business

# AG sues Colorado's largest foreclosure law firms alleging massive fraud

**By David Migoya**
*The Denver Post*
Posted:   07/15/2014 05:53:18 PM MDT34 Comments | Updated:   about a year ago



Lawrence Castle attends a meeting at the state Capitol, Tuesday, Aug. 2, 2011. (The Denver Post file)
Related Stories

- Jul 17:
- Aronowitz settles class action: Overcharges refunded to 32,000 homeowners
- Jul 10:
- Lawsuit: Castle partners reason for $45 million investment loss
- Apr 11:
- Fannie Mae cuts ties with two top Denver foreclosure law firms
- Feb 5:
- Bill would require refunds of overpaid foreclosure costs in Colorado

Colorado's largest foreclosure law firms — The Castle Law Group and Aronowitz & Mecklenburg — were slapped with massive civil lawsuits Tuesday by attorney general investigators who say the lawyers operated a multi-million-dollar scheme that defrauded tens of thousands of homeowners, banks, investors and, ultimately, taxpayers.

Principals of the Aronowitz firm, which is second to Castle in the number of foreclosures handled in Colorado, immediately agreed to pay $10 million to settle the case, and will either sell or close its Denver-based law practice in the next six months, according to copies of the settlement filed in Denver district court.

Castle, led by attorney Larry Castle, is expected to fight what is likely to be a long court battle over an investigation that lasted more than two years.

Attorney general investigations into the practices of other foreclosure law firms in Colorado continue.

It's unclear how far the reverberations from the Colorado cases will be felt, but several of the illegal practices alleged in the lawsuits are widespread across the foreclosure industry nationwide.

The scope of the allegations in Tuesday's complaints range from collusion between law firms to set the price on process services fees associated with foreclosure cases, to the inflation — and in some cases outright creation — of fees charged to homeowners trying to save their house from seizure, or the banks that hired the law firms to foreclose.

The 40-page lawsuits lay out a well-developed scheme that exploited nearly every facet of the foreclosure process. The law firms left virtually nothing out of their profit center: from title searches and title commitments, to the posting of legal notices and costs to file a foreclosure.

Combined, the law firms handled more than 150,000 foreclosures in Colorado since 2006 and overcharged by as much as $650 for each. The total of illegitimate profits could easily have reached $97 million in less than a decade.

Colorado Attorney General John Suthers said he was disturbed by what investigators uncovered, fostered largely by how the state's foreclosure system carried little oversight.

"These inflated costs were passed on to homeowners trying to save their homes from foreclosure, successful bidders for properties at foreclosure sales, and to investors (banks) and taxpayers," Suthers said. "The facts uncovered by our investigation are very disturbing and, frankly, reflect poorly on the legal profession."

Attorneys for Castle did not immediately respond to requests for comment. His law-partner wife, Caren Castle, their accountant, Ryan O'Connell, and Kathleen Benton, who owns Absolute Posting & Process Services, the company tied to the alleged scheme, all are named as co-defendants.

Two other companies are named in the Castle complaint: RE Records Research in Denver, and Colorado American Title in Englewood.

Attorneys for Aronowitz & Mecklenburg, owned by Robert Aronowitz, his daughter, Stacey, and her husband, Joel Mecklenburg, said the lawyers made no admission of guilt in settling.

"They don't believe they engaged in any violations, there are no admissions, and it would have been one heck of a fight," attorney Richard Benenson said Tuesday. "But it was not in their best interest to let that happen. It was better to address the issues and move forward."

The Aronowitzes and Mecklenburg are allowed to continue working on foreclosure matters, but cannot have an ownership interest in any law firm or other business with ties to the foreclosure industry.

Benenson said they will likely shutter the firm's process service business, Xceleron, which was at the core of the attorney general's investigation against them.

And they will pay $8 million within a month of a judge approving the settlement, and $1 million each year for the next two years, some of that money reimbursing homeowners who were overcharged in some current foreclosures.

Some of the lawsuits' allegations could have far-reaching effects on foreclosure law firms across the country, Benenson said, because lawyers' use of affiliated businesses to handle foreclosures is "common practice."

"Many foreclosure law firms, especially those of any size across the United States, are likely at risk for these very same issues," Benenson said.

The lawsuits allege violations of Colorado's Consumer Protection Act, its Anti-trust Act, and its Fair Debt Collection Practices Act.

The investigation began in May 2012, when attorney general investigators gathered foreclosure documents from public trustees in four counties showing what the law firms charged consumers.

The inquiry came after a number of Denver Post stories probing the foreclosure process, the conduct of several public trustees and the law firms.

The bulk of the allegations in the lawsuits focus on the law firms' largest money-maker: colluding to charge $125 for each of a pair of official notices required to be posted on a foreclosed property advising homeowners of their rights. The actual cost, investigators say, is closer to $25.

The law firms "pay process servers $7 to $10, plus mileage, per posting, and then turn around to claim a cost of $125 that must be paid without challenge or inquiry," the attorney general lawsuit alleges.

Investigators say Castle and Aronowitz were able to do this because they controlled more than 75 percent of foreclosure cases filed in Colorado — a state that at one time led the nation in the number of foreclosures — and funneled the work to companies they owned or controlled.

The lawsuits outline a number of e-mails between Stacey Aronowitz and Caren Castle in which they apparently decided how much they would charge for certain services, ensuring they did so together, investigators allege, so that the scheme would succeed.

By agreeing to fix the price to do the work at an amount vastly higher than normal market fees, the law firms were able to pocket millions of dollars in profits.

And no one was watching. Not the banks servicing the loans, not mortgage investors who own them, nor the federal government insuring them.

"Defendants got away with this extensive fraud by taking advantage of the inherent lack of oversight in the foreclosure process," according to the lawsuits. They "also got away (with it)... because no homeowner, (foreclosure auction) purchaser, or taxpayer can challenge the law firm's claimed costs. Nor may the public trustees, (who) administer the foreclosure process, or the courts, which authorize the foreclosure sale."

The Castle Law Group relies on Absolute Posting & Process in Northglenn, which Suthers' office says was 40 percent owned by principals at the law firm, though now 90 percent.

The investigation apparently caused Fannie Mae, the nation's mortgage-finance giant, to cut ties with the two law firms, ordering that all of its cases be transferred to other law firms. Fannie Mae did not approve any of the inflated charges, investigators say, although the law firms claim otherwise.

Investigators say Castle also profited by charging for services that were already part of its legal fee, such as a $50 charge to file a one-page document "that can be completed in seconds" that was already required as part of the foreclosure process. Aronowitz charged double that amount for the same document.

Also, both law firms allegedly charged $25 to check whether a homeowner was in the active military even though the cost is free. And a $3 bankruptcy search fee was beefed up to $25.

Other lawyers reacted sharply to news of the lawsuits.

"Legal ethics forbid a lawyer from accepting referral fees from a process server, for example, but allow lawyers to profit by sending business to a process serving company owned by the lawyer," foreclosure attorney Jon Goodman said. "In foreclosures, where borrowers often pick up the tab but don't pick the attorney, we should think about whether lawyers should be able to send business to companies they benefit from. If it could rationalize a scheme to puff expenses, all of us could."

In August, Suthers' office said it appeared the law firms manipulated and influenced the foreclosure process — in practice and at the state Capitol — in a way that guaranteed themselves a way to profit.

Castle also owned law firms in several other states, which are the center of a federal lawsuit filed by investors who claim Castle is at the root of why their $45 million buy-in is now worthless.

Through a new company called New Organization, Castle and partners bought back much of the side businesses he sold to the investors when the holding company that controlled them — RPH Holdings Group — was insolvent.

*David Migoya: 303-954-1506, dmigoya@denverpost.com or twitter.com/davidmigoya*