**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:15-cv-01734-RBJ

DENNIS OBDUSKEY, an individual,

Plaintiff,

v.

WELLS FARGO, WELLS FARGO BANK,
WELLS FARGO & CO., WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE, and
MCCARTHY AND HOLTHUS LLP,

Defendant.

---

## PLAINTIFF'S RESPONSE TO WELLS FARGO BANK, N.A.'S MOTION TO DISMISS

---

**COMES NOW,** the Plaintiff through his counsel at Riggs Abney Neal Turpen Orbison and Lewis, in Response to Defendant Wells Fargo Motion to Dismiss, as such they plead the following:

1.      Pursuant to *Davidson v. Dill*, 503 P.2d 157 (Colo. 1972):

[A] Complaint should not be dismissed for failure to state a Claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

The Plaintiff and Defendant have failed to begin the discovery process which shall bring forth additional documentation showing disputed facts. Furthermore, within Plaintiff's complaint there are numerous issues and facts of dispute included but not limited to acceptance of payment and the honoring of former modifications.

## I.      PLAINTIFF'S FDCPA CLAIM

*First,* Wells Fargo bank argued it was not a debt collector under the FDCPA. The bank argued that the FDCPA only applies to "parties collecting the debt of another," 15 U.S.C. §

1692(a)(6), and that "creditors, mortgagors and mortgage servicing companies are not 'debt collectors' and are exempt from liability under the [FDCPA]." *Id.* (citing *Caballero v. Ocwen Loan Servicing,* 2009 U.S. Dist. LEXIS 45213, 2009 WL 1528128, at *1 (N.D. Cal. 2009) and *Glover v. Fremont Inv. and Loan,* 2009 U.S. Dist. LEXIS 117890, 2009 WL 6114001, at *8 (N.D. Cal. 2009)). *Second,* Wells Fargo claimed that the FDCPA does not apply in a non-judicial foreclosure proceeding. The federal court disagreed with Wells Fargo on both grounds, the term "debt collector" applies to those who acquired the debt when it was already in default. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

Court have adopted that foreclosure falls under FDCPA. *See Albers v. Nationstar Mortg. LLC,* 2011 U.S. Dist. LEXIS 182, 2011 WL 43584, at *2 (E.D.Wash. Jan. 3, 2011) (citing cases). To the contrary, courts have reasoned that as long as a defendant meets the statutory definition of debt collector, "they can be covered by all sections of the Act . . .regardless of whether they also enforce security interests." *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006) (referring to § 1692f(6) as an inclusive provision); *see also Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2005) (noting that "the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of debt collector").

**(15 U.S.C. § 1692c)** Defendant Wells Fargo Home Mortgage shared details related to Plaintiffs Wells Fargo Visa Account with that internal Wells Fargo department, related to comments Plaintiff made to the Federal Trade Commission regarding Mortgage Servicers.  This conduct surpasses the firewall that is supposed to exist between departments.

**(15 U.S.C. § 1692d)** Defendant Wells participated in Harassment and Abuse by posting Urgent notices of the door or publicly accessible street fence monthly for nearly <u>three years, the most recent of which occurred August 6, 2015</u>. Suring the entire process they were aware that the home was occupied and Plaintiff was represented by Counsel.

**(15 U.S.C. § 1692f)** Defendant Wells and Defendant McCarthy & Holthus followed unfair practices by representing to be collecting debts that were unsubstantiated by any official documentation.  In addition, Wells twice filed a Notice of Election and Demand with the Park County Public Trustee claiming possession of a legal and proper Assignment of Deed of Trust making Wells the Holder of the Evidence of Debt, when, in fact, they did not possess said assignment.  An eventually filed assignment, posted in the office of the Park County Clerk and Recorder on May 11, 2011, is still being relied upon today, though the assignment appears to have given title to Wells Fargo by one of its own employees and leaves numerous unanswered questions about its validity.  In addition, a copy of the endorsed Note which Defendant Wells used in its third foreclosure action prior to a 2014 Rule 120 District Court Hearing (later dismissed), included a VOIDED endorsement which appears to be endorsing the note to Wells Fargo by Lori Venegonia, Vice President of Loan Documentation, of Wells Fargo.

Plaintiff believes the other endorsement on the same note, from "Post Closer Christopher Trujillo" of First Magnus Financial Corporation, is a forgery added after the fact as First Magnus filed for bankruptcy and dissolved in 2007.  In addition, in correspondence from a different representative at Wells on August 27, 2015, Executive Mortgage Specialist Kristopher Peterson claims "we have been unable to locate the hand written "void" on a Note we have sent," which leaves open the question of validity and duplicate "originals."  The requirement of valid

documentation is discussed under C.R.S. 38-38-101.  A July 13, 2010 phone call to the mortgage payments department when Plaintiff inquired where funds he paid for "Trial Payments" toward a loan modification went, he was advised $400 went to Attorney Fees, $1500 to Clerk Costs, $1600 to Corporate Costs and $3509 Pending.  Some of those charges disappeared in later paperwork supplied by Defendant.  Documents supplied by Defendant McCarthy & Holthus in an unsuccessful debt validation effort showed monthly "Property Preservation" charges which, then, did not appear in a documentation snapshot supplied by Wells to the Consumer Financial Protection Bureau on June 30, 2015.

**(15 U.S.C. § 1692g)** Defendant McCarthy & Holthus, as counsel representing Wells Fargo, failed to properly provide written validation of debt to Plaintiff after advising him that they were obliged to follow state and federal debt collection statutes.  They then initiated a Notice of Election and Demand without providing said documentation, in violation of federal and state statutes.  Counsel for defendant Wells claims they are not a debt collector, yet virtually all documents in written correspondence from Wells and its counsel claim that they are acting as debt collectors.  The Colorado Collection Agency Board, in a 1991 Opinion Letter still posted on the state Attorney General's web site, advises that while licensing may not be required, the company must still comply with the non-licensure provisions of the Colorado Act with regard to those debts, even if those debts were obtained when the debt was not considered in default

## II. PLAINTIFF'S CCPA CLAIM

Colorado consumers who have mortgages should have the ability to distinguish which party is acting within the role as servicer and which party is acting within the role as lender.  Plaintiff provides additional evidence to his claims including Correspondence to the Office of

Comptroller of the Currency updating information from a prior complaint filed in 2012.  (Exhibit 1)  It includes historical data as well as a copy of QWR and Request for Information sent on July 17, 2015.   Despite having numerous opportunities to correct the misrepresentation the Defendant Wells Fargo built upon them as highlighted within the July 17, 2015 OCC and revised QWR complaint (Exhibit 1). Defendant has failed to recognize is that   Courts are generally obligated to protect property rights in the United States and help clarify real property ownership. Plaintiff does NOT concede that Wells Fargo started a foreclosure action due to nonpayment

Plaintiff is of the belief he meets the five claims that are necessary to prompt a Colorado Consumer Protections Act Claim.

**UNFAIR AND DECEPTIVE TRADE PRACTICE**

It is well documented that the previous law firms (Castle Law Group, Exhibit 2) that were hired by Defendant to allocate foreclosure proceedings upon Defendant and Colorado consumes inflated their pricing and fees. The CO attorney general filed a lawsuit related to improper fees against the law firm Defendant used in his first three foreclosures with Plaintiff (Exhibit 4). In addition, Defendant has constantly made alleged property preservation checks on the Plaintiff's home. These preservation checks were done despite Wells Fargo having full knowledge that Plaintiff was occupying the premises.

Plaintiff contends that the fees—which appear to be for attorney fees, filing costs, clerk costs, post-sale notices and a title policy (Exhibit 3)[1]—are not collectible under Colorado law because they were imposed in a deceptive manner.

---

[1] **The spreadsheet is difficult to read, but it appears only $3,751.24 in fees are at issue.   While noting that yes, the spreadsheet is difficult to read, note that it was provided by Wells Fargo as a response to the CFPB.  It only represents a partial history, and numbers don't match up against different figures presented as**

Plaintiff followed instruction from Defendant Wells in a precise manner, including Wells Fargo employees advising Plaintiff not to make payments as they were being rolled into the principal. Furthermore, a company attempting to foreclose on a property that they do not have any legal rights within is deceptive to Colorado Consumers. The three previous foreclosure actions, and the current pending action, asserts that Wells Fargo Bank, N.A. is the holder of Evidence of Debt. However, on more than one occasion Wells Fargo has asserted that Freddie Mac is the holder of the debt and owner.

Defendant was deceptive within their practices related to modifications. They failed to grant such modifications despite Plaintiff making all trial payments in a timely manner and removing fees from Plaintiffs bank accounts.

**CHALLENGED PRACTICE OCCURRED IN THE COURSE OF BUSINESS**

Wells Fargo is in the business of owning and servicing mortgages. Representing that a company is owner of a mortgage when it is not is deceptive, Wells Fargo must understand it is in the public interest to properly identify lenders and servicers of loans. Defendant filed two foreclosure actions claiming the legal right to foreclose when it provided no documentation proving such is deceptive. Defendant Wells asserted that they were merely the servicer of the loan and claiming that FHLMC (Freddie Mac) is the owner/investor (Exhibit 5) while documents presented two years earlier shows that Freddie Mac was not involved with the loan. (Exhibit 6)

Due to the questionable assignment of such mortgage by what appears to be a Wells Fargo employee,  (Exhibit 7) this is clearly not an arms-length transaction by an "Assistant Secretary" of

---

(improper) validation of debt by McCarthy Holthus.  Using the term "only" to minimize the significance is always easy when it's someone else's money.

MERS (Exhibit 8)  Plaintiff asserts this also likely took place in creation of an endorsement from First Magnus to Wells Fargo. The behavior regarding Wells Fargo, Freddie Mac, and MERS creates issues of fact and controversy based on the claim that the transfer via MERS is void. (Exhibit 9, 10, 29)  The public should understand the likelihood that Wells Fargo foreclosure practices were designed to produce documents where none existed, are codified in a Wells Fargo manual.   (Exhibit 29) The VOIDED endorsement does not contain proper signatures acknowledging the VOID under Freddie Mac Rules for Documentation.

Wells has charged Plaintiff $15 "property preservation charges through 9/12/14.  While no notices ever appearing on the door of the house ever addressed "property preservation," but instead advised Plaintiff:  IMPORTANT. PLEASE CALL.  800-678-7986. PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER.  The phone number is to Wells Fargo Home Mortgage. Surprisingly those items do not show up on the spreadsheet from the CFPB complaint in August and shows how accounting documentation appears to be easily and willfully changed.  Note in Class Action Suit (Exhibit 12), notice of which Plaintiff received in mid-October 2015 via post card (Exhibit 13) that Wells Fargo has agreed to a $25 million out of court settlement related to unnecessary and improper actions.   As the visits stopped after this suit was filed, no doubt there is confirming subpoenaed records.  Note, too, in (Exhibit 14) upon inquiring about the continual notes being left at the home of the Plaintiff for many months by counsel for Plaintiff in 2013, Toney Green of Wells Fargo said, "Please tell borrower to disregard that letter as it is not legit," Counsel representing Wells at the time also confirmed no knowledge of the notes/placards.

Defendant Wells, offered proposed modifications to Plaintiff under HAMP, then withdrew the offers claiming numerous excuses. Wells "appears" to take the place of the investor via the

assignment, yet never purported to represent itself.  Another denial letter claimed denial as the loan had already been modified which was clearly an error.

Additionally, while HAMP implied approval after trial payment compliance, and Plaintiff was "100% assured after a 2012 offer" after verifying the terms at a face to face Wells Fargo Event in Denver, who at that time would've been the owner of the note if the questionable assignment is to be believed, then refused to modify the loan based on information they hadn't given Plaintiff. (Exhibit 15). In addition, as another deceptive practice, Wells withdrew a sixth "trial payment" on Modification offer #1, then sent a denial letter the same day they withdrew the payment funds from Plaintiffs checking account.  (Exhibit 25, 26)

## SIGNIFICANT IMPACT ON PUBLIC

The actions that Plaintiff mentioned within his complaint are also highlighted by the OCC within the latest round of sanctions imposed directly on Wells Fargo, and virtually all of the items addressed by the OCC in its June 16, 2015 updated its 2011 and 2013 Stipulation and Consent Order appear in this case.   The OCC and the CFPB are charged with representing the public trust, though their actions have some limits in individual cases and both have suggested that this legal action may be necessary to address details this case.   Not only does the proper ownership of property records belong within the public prevue, this is one major reason why the bank-owned Mortgage Electronic Registration System ("MERS") fails the public by keeping that public information private, and banks have taken advantage of that by failing to maintain proper electronic trails and the adhere to the additional responsibility of correctly maintaining those records.   When insurance companies recommend that purchasers of foreclosed homes buy

additional insurance "in case" ownership hadn't been properly clarified in the past, this also hits all home purchasers in their pocketbook as insurance is a pooling of risk.

**SUFFERED INJURY BY PUBLIC AND PLAINTIFF**

The Plaintiff as well as the public have experienced tremendous problems from Wells Fargo during the past 6 years. There have been numerous lawsuits within Federal Courts pertaining to Wrongful Foreclosure based on chain of title, and in addition, some purchasers of foreclosed properties report the inability to obtain title insurance because some insurers believe the potential risk of having to pay a claim somewhere down the road too high.

Wells Fargo attempts to claim that the placards are placed on doors as part of a welfare check on the home. This is blatantly dishonest. Furthermore, Wells Fargo claimed that that they were unaware of any notice being left on door but the phone number listed upon such notice was a direct dial to Wells Fargo. Similar to allegations that Plaintiff alleged within this complaint a Class Action lawsuit now exists regarding the placards that Wells Fargo has wrongfully placed on the door during the last 12 months.

In addition, The Castle Law Group who represented Wells under Foreclosures 1, 2 and 3 (under different names) was sued in 2014 by the Colorado Attorney General for improper foreclosure charges and practices alleging violations of the Colorado Consumer Protection Act, Colorado Anti-Trust Act and Colorado Fair Debt Collection Practices Act. While that case is still open, note that one allegation is that there was collusion to charge $125 for posting some notices on foreclosure targets homes and creating illegal profits. (Exhibit 4, 30).

**III. PLAINTIFF'S DEFAMATION CLAIM**

Plaintiff has been on notice since January 18, 2013 over negative credit comments that Wells Fargo reported.  The account information is "disputed" and Plaintiff has protested the credit reports and sought changes since such date, however despite requests the language failed to be amended.  (Exhibit 18). Defendant Wells did not honor its agreement and the issue spans all activity from the date of the letter through filing of this action.

Defendants counsel is of the belief any defamation claims are barred by statute of limitations. C.R.S. § 13-80-103. Wells Fargo Defense Counsel must realize that over the course of four foreclosure actions, a total of 20 notices related to NED filings with the Park County Public Trustee were published defaming plaintiff in the local newspaper of record, the Park County Republican and Fairplay Flume; five after each NED filing. (Exhibit 19, 20) and most recently between July 24, 2015 and August 21, 2015. (Exhibit 21).   As Plaintiff is held as a respected member of the community involved in the political process, these continual publications have not only defamed Plaintiff, they have contributed to him not running for public office.

Plaintiff was not in default during these alleged foreclosure actions on three separate occasions as he was in a trial payment periods and making such payments. However, Defendant was printing notices of default and filing notice of election and demand as modification negotiations were occurring.

Defendant had knowledge of the modification negotiations and the directions they provided to Plaintiff yet filed the notices thereby painting a perception of a dead beat debtor.

## IV. PLAINTIFF'S EXTREME AND OUTRAGEOUS CONDUCT

Defendant Wells Fargo has caused Plaintiff to hire legal counsel on three separate occasions as they threatened and started 3 foreclosure proceedings despite being in some state of

modification negotiation. The initial foreclosure action, started in 2009, was extreme and outrageous and each successive one had its own punishing and shocking character. Plaintiff was in negotiation with Wells Fargo while in each foreclosure situation essentially Wells Fargo was dual tracking.

In Exhibit 22 Plaintiff shares in detail with a federal agency how Wells Fargo Home Mortgage "consumer service" was structured, Plaintiff was unable to receive consistent and accurate information regarding his mortgage. Beginning on Page 5 of the FTC filing, plaintiff lays out in detail documentation showing how Defendant Wells Fargo Home Mortgage intentionally withheld info.

1)  Defendant Wells would like to have the court ignore these actions as irrelevant because of their July 2009 date, however the seed of disruption was planted in 2009 for all current extreme and disgraceful actions.

2)  A business practice in 2009 that Defendant Wells had in place at the time failed to allow contact with the same individual twice, thus, on successive contacts, (Exhibit 23) Plaintiff was again given different information and advised that the original pre-HAMP modification was irreverent as he was now forced to "apply" for a new program provided by the federal government called HAMP. It wasn't until a response from Wells Fargo related to the initial Qualified Written Request (Exhibit 1) in 2011, did Defendant Wells provide documentation claiming that because of plaintiffs inaction, the original modification was "deemed null and void." Wells refers to a May 29, 2009 "replica" of correspondence. Plaintiff asserts that "replica" infers creation of documentation at some point in the future when none otherwise existed.

3)  In that same December 9, 2011 letter, Defendant Wells advises Plaintiff that Wells "does not have a record" or receiving certain documents from Plaintiff. Plaintiff fax records show evidence of sending requested documentation though Defendant later claimed to have never received them.

4)  Plaintiff received two phone calls late in the day from Marissa Willey; one at 2:38pm on December 9, 2011 and a second at 4pm. The transcript of the 4pm voicemail says, in part, "Since I haven't been able to speak to you over the phone, I will go ahead and <u>request</u> a resolution sent in writing to you." Two hours later, a 93 page package which included a 7-page cover sheet written by a different person was picked up by Federal Express. How did Sarah Dornbush compose a 7-page cover letter and compile an additional 86 pages of documents, write, edit, proofread and verify, put it together and prepare it for Fedex pickup in 90 minutes. The letter states that the "last" attempt by Ms. Willey to contact Plaintiff by phone was on December 9 but fails to note that the first attempt was less than 90 minutes earlier. (Exhibit 32)  The documentation was pre-manufactured.

5)  Coupled with a letter Plaintiff received from a new "single point of contact," Forrest Nelson (Exhibit 24), saying he was sorry Plaintiff was unable to resolve issues in a phone call, the fact is that Plaintiff NEVER spoke to Mr. Nelson or Mrs. Willey.

6)  Plaintiff calls your attention to Exhibit 25, a June 16, 2015 Consent order amending and related items – public information showing where the Comptroller of the Currency found numerous procedures at Wells that failed to improve since 2011 including failure (1)(a)(i) to ensure processes to ensure all factual assertions made in pleadings are accurate, complete, timely and reliable …. (ii) a clear and auditable trail exists…., (iii) processes to

ensure all fees, expenses, and other charges assessed in accordance with the note… (iv) ongoing testing for compliance with applicable Legal  Requirements and OCC guidance … (v) measures to ensure that policies, procedures and processes are updated…(vi) processes to ensure programs have the requisite authority and status within the organization so that appropriate Mitigation, and foreclosure activities and operations may occur and deficiencies are identified and promptly remedied.

7) Article IX, Mortgage Servicing. The OCC determined that Defendant Wells was still in noncompliance with a number of issues related to coordination of communications with borrowers, related to Loss Mitigation or loan modification and foreclosure activities.

8)  Article XIII advises "The Bank is in continuing noncompliance with and in violation of the Consent Order, and continues to engage in unsafe and unsound practices."

9) It is important to note that all of these issues are items referenced throughout this complaint and as of two months prior to filing of this action were STILL considered problems.

Clearly the Defendant has asserted differing ownership of the note at different times as mere statements within correspondence. Unfortunately, Defendant Wells Fargo makes different assertions in different letters and refused to provide any custodial historical, unequivocal documentation to support any of its ownership claims. Even Freddie Mac (Exhibit 26) claims that as of July 29, 2015 Freddie "Freddie Mac Owns your Mortgage."

Proof of the evidence of debt as required under Colorado Statute, both before and after alleged and qualifying assignment and without following Freddie Mac guidelines concerning voided endorsements on the back of the original note. (Exhibit 11). Additionally, in correspondence with Counsel in response to the amended OCC complaint, dated August 27, 2015,

(Exhibit 27) Defendant states "we have been unable to locate the hand written "void" on a Note we have sent." This statement suggests the possibility of forgery if more that more than one copy of the "original" Note exists. Foreclosure Manuals suggest creation of a nonexistent document to complete their files (Exhibit 31). This letter is also the FIRST TIME in any correspondence that "The Assignment of Deed of Trust assigned all rights, title, and interest to the Security Instrument TO US…"

Colorado Attorney Keith Gantenbein #39213 was the signer of the NED in 2011. He testified in a state House Committee hearing in 2011, that he was regularly asked to sign documents by his employer, based on "generally on little more than an email from a bank or loan servicer."

Example: Defendant Wells Fargo asked Plaintiff to provide new documents so that he may obtain a modification, two days later Defendant denies a modification because the documents had not been received but never provided instruction or advised Plaintiff of a 48-hour submission.

Example: Defendant contacted Plaintiff asking him for new documents while the Plaintiff was out of town. Plaintiff stated he would provide the documents 10 days later and the Defendant acknowledges that and makes note of it in his system, then Defendant closes the modification request less than a week later. Those type of items are left out of letters Wells Fargo supplied Plaintiff. These are also clearly why the OCC continues its actions seeking compliance from Defendant Wells. Defendant in its August 27, 2015 letter to Plaintiffs' counsel in fact uses this case as an example stating that "on January 5, 2010, we had not received necessary documents to review Mr. Obduskey for payment assistance. The letter fails to mention two important facts: 1) that Plaintiff was in New Mexico and advised Defendant he would supply the new documents just requested within 10 days, though Defendant Wells still closed the review. In this case Defendant

Wells Fargo had continued to withdraw Modification payment amounts beyond the requisite 3 that HAMP provided for. To add insult to injury, the Defendant took SIX payments from Plaintiffs checking account and the sixth payment was taken THE SAME DAY as the letter advised Plaintiff the review was closed.  Plaintiff also enumerated (Exhibit 28) extreme and outrageous issues to the Colorado State Senate Judiciary Committee. That testimony was part of the growth process of the tree and that historical documentation cannot be considered in a vacuum.  (Exhibit 33)

In Foreclosure #1 Plaintiff spent $3,000 to hire an attorney (Sean Paris) to attend a scheduled Rule 120 hearing with him. Attorneys for Wells Fargo failed to appear.  The hearing never took place and Wells, eventually withdrew the action as Wells clearly was not a party of interest and did not possess the requisite documentation to complete a foreclosure.

In Foreclosure # 2 and #3 Plaintiffs' counsel prepared and filed responses to Rule 120 Hearings which were vacated days prior to the hearing taking place. Wells Fargo is seeking that this court to dismiss Plaintiff's claims despite Plaintiff making all of such trial payments  four foreclosures being brought by different law firms and Wells Fargo's  failure  to disclose  or acknowledge Freddie Mac's involvement in the loan, despite dozens of  formal requests.

## V.      PLAINTIFF'S UNLAWFUL COLLECTION.

Defendant alleges Foreclosures are governed by the specific 15 year statute of limitations in C.R.S. § 38-39-205, rather than the 6 year general debt collection statute of limitations in C.R.S. § 13-80-103.5.  See, e.g., Mortg. Invs. Corp. v. Battle Mountain Corp., 70 P.3d 1176, 1179 (Colo. 2003).  However, Plaintiff's counsel clearly is attempting to circumvent the fact that attempting to hold a person liable for an outstanding debt related to real property as well as attempting to take such property from a legal perspective is a debt collection and FDCPA and FCPA laws apply.

In the current legal matter both Defendants Wells and McCarthy Holthus have debt collection disclaimers on virtually all correspondence. (See Exhibit 5)

Courts have  held that an action to foreclose on a deed of trust is governed by the fifteen-year limitations period contained in section 38-39-205, 10 C.R.S. (2002), <u>when a party has commenced suit for default on the original promissory note within the six-year limitations period</u> contained in section 13-80-103.5, 5 C.R.S. (2002).

Within this legal matter Defendant Wells Fargo failed commence suit on a promissory note within six years of default, the deed of trust is extinguished because the six-year limitations period in section 13-80-103.5(1)(a), 5 C.R.S. (2002), would bar enforcement of the promissory note; therefore, the lien would be extinguished under section 38-39-207, 10 C.R.S. (2002). <u>Martinez</u>, 730 P.2d at 313 ("under [section 38-39-207], when an action to recover on a promissory note is barred, any lien securing such note is extinguished").

But, if a party commences suit on the promissory note <u>within six years of default,</u> subsequent collection of payment of the debt through execution on a judgment lien or foreclosure on the lien of the deed of trust is not barred by section 38-39-207, 10 C.R.S. (2002).

In the matter before the court, no circumstance exists that would change the statute of limitations to the 15 years.

## VI.    PLAINTIFF'S OTHER CLAIMS.

Clearly Counsel for Defendant Wells wishes to avoid the issue of a Constitutional Action related to the Rule 120 process, however, the process has an impact for thousands and thousands of Colorado foreclosure "victims." Defendant Wells has, thus far, continued to fail to provide evidence of any sort proving they are even a party with foreclosure rights to the property.

Defendant Wells has asserted that "some items will only be provided by subpoena," yet they have never differentiated what those items are nor provided an appropriate accounting for the loan. Plaintiff suspects this issue is a part of the OCC actions against Wells and it is likely that their procedures and processes cannot provide real appropriate evidence.  The initial QWR was written not by the Plaintiff, but by a HUD-Representative agency required during the HAMP process as part of the modification process.  NACA, the Neighborhood Assistance Corporation of America, is that organization and experienced in such matters and had reason to question several pages of items based on their experience.  NACA forwarded the 1st QWR to Wells through its Boston Offices, Wells acknowledges receiving it but not when, and misfiling it, apparently never acknowledging its existence to NACA nor providing a point-by-point response.   Because the lack of a response begot no answers, Plaintiff again filed a new QWR with Wells on July 17, 2015. Defendant Wells, as of a letter dated September 25, 2015, has yet to respond, saying it "is going to take longer than originally anticipated. Note, too, that the letter provides confused dates.  The letter is dated September 25, 2015, says "we anticipate a final resolution will now be provided to you by September 27, 2015, and it was mailed September 28, 2015.

For these reasons, Plaintiff requests that this Court deny each of Defendants attempts for dismissal.  Defendant Wells has provided no arguments that even rise to a level to approve any dismissals on any Claims.