Dennis K Obduskey
132 Wagon Tongue Road
Bailey, CO  80421

Customer Assistance Group
Comptroller of the Currency
1301 McKinney St., Suite 3450
Houston, TX  77010-9050

RE: OCC Case #02089486    (OR create a new case)

7/17/2015

**Dear OCC Representative:**

This has been a lengthy and difficult issue in dealing with Wells Fargo on my home loan since 2008.  The case number listed above and my documentation enclosed relates to a complaint I filed November 7, 2011, via the Office of RESPA and Interstate Land Sales which was forwarded to the OCC, which forwarded it to the Independent Foreclosure Review where it basically died.  A copy of that complaint and the OCC original response with case number is enclosed.  I included sheets from your web site here for a "new" complaint if you wish to assign one, but it's truly an ongoing issue and perhaps it's best as documentation for the OCC to understand that it appears little has changed in dealing with Wells Fargo since 2008 and include it under a reopened complaint.  This note relates to the same home, only updated to <u>current events which took place earlier this month</u>.  I am currently involved in my fourth foreclosure action with Wells Fargo.

At the end of this letter I include a number of Federal documented case sources related to me, which include numerous available attachments should you wish to review them.  I won't provide them all here.  Your agency has my permission to request any and all documents on those related cases from the respective agencies, and some are public records anyway.  I did not include every piece of information here as <u>I am seeking guidance from the OCC</u> for appropriate further dealing with a problem which has consumed more than one-tenth of my life. It appears that the courts are my primary solution.

The original complaint in this RESPA case (#02089486) related to Wells Fargo's failure to reply to a Qualified Written Request which was sent to them in June 2011 during foreclosure effort #1. All foreclosure actions prior to 2015 have been withdrawn by the representing law firm.  Wells <u>never directly responded to the QWR</u>, which, incidentally, was written not by me but by my HUD-approved counselor, NACA, the Neighborhood Assistance Corporation of America.  I've included a copy along with my original complaint.  It would've been a simple matter to do so point-by-point, but, rather, they stuck with generalities and "too broad" explanations, buried in letters detailing and creating support for their inadequate records.

Several years of misinformation and re-documentation of lost paperwork are typical and I would be more than glad to go into serious detail with you, but now, however, the problem appears to have taken on a more nefarious side:

My single point of contact has vanished from Wells records, claiming there isn't one, and documentation sent to me in response to a complaint I filed in June, 2015, with the Consumer Financial Protection Bureau related to lack of debt validation prior to initiating a collection action shows <u>numerous new changes, charges and discrepancies</u>.

Ownership records at Wells Fargo morphed from a MERS record I printed December 27, 2010 saying "This Investor has chosen not to display their information," to assignment to Wells Fargo via a MERS "assistant secretary" on May 3, 2011, allegedly backdated to the date the loan was signed May 31, 2007.  An endorsement appearing on the back of a note copy shows a handwritten "VOID."  In the same CFPB reply this month, Wells now claims that the loan was assigned to Freddie Mac on June 18, 2007 and Freddie Mac is the CURRENT owner.  A snapshot spreadsheet for 2014-15 provided to the CFPB last month lists charges apparently added to the account which are really not documented, including expenses for

EXHIBIT - 1

Dennis K Obduskey

postings of sale last year (when no foreclosure was active – didn't happen), payment for two title policies, and other attorney fees with no explanation and to what or why the charges were added to the record.

My attorney, Steven Hill, sought (by phone) clarification of the CFPB documents supplied by Wells Fargo after receiving their CFPB response dated June 30, 2015. He spoke to Wells Executive Mortgage Specialist Todd Good earlier this month. Mr. Good had supplied the documents to the CFPB and assured my attorney that everything was properly researched and accurate, though when asked "who really owns the note," after a long pause, Mr. Good said, "I'll have to get back to you." No response at this time. At the recommendation of the CFPB, my attorney is currently preparing an FDCPA lawsuit against the debt collector / law firm for failure to validate the debt prior to initiating further action.

Details are too extensive to try and put in a brief letter though I am including a spreadsheet related to testimony I made at a state of Colorado Senate Judiciary Hearing in 2012 that outlines the majority of my Wells Fargo issues. The hearing was part of a legislative bill presented to change and improve foreclosure laws in Colorado. I have added other items to the spreadsheet since then.

Wells ultimately conceded that my original QWR was misfiled. They answered select portions of it in independent letters and ignored ownership-question-related others in near 100-page letters claiming that, essentially, everything that happened related with my mortgage, and all documentation received was done perfectly at Wells Fargo, and every problem I ever encountered was my fault. I would be happy to make myself available to testify to any Federal commission. My documentation is extensive.

I also note (in case the OCC isn't aware of it) that Wells appears to hide complaints they receive under the term "inquiry." This creates the false impression that they are actually trying to resolve a concern when it has been clear to me over the years that responses tend to be just an effort to put together documents, possibly create missing ones, and create a supporting paper trail where none exists, rather than clear up any unresolved questions. I was initially naïve and believed they wanted to help.

My best example is when Wells Executive Mortgage Specialist Sara Dornbusch advised me in a 93-page letter on December 9, 2011, (responding on behalf of Marissa Willey, my (at the time) single point of contact), making claims that though I accepted a pre-HAMP loan modification they offered in 2008, I signed and returned the "wrong one." I learned about their explanation of the initial problem nearly THREE YEARS later in that letter. They were able to only say they had provided a "replica" of the replacement. I was eventually "forced" to apply for a HAMP modification, time and time again as a simple problem snowballed because no one at Wells wanted to accept responsibility for any error, ever.

There was the situation where then Wells Home Preservation Specialist Forrest Nelson sent me a letter January 26, 2012 thanking me for speaking with him and claiming we were unable to reach a mutual resolution to my problem. The problem was, I never spoke to Mr. Nelson. I left him a voice message which was never returned.

New information sent by Mr. Good to the CFPB again adds new "documentation" asserting new loan ownership. It claims I wasn't involved in any mitigation activity, and there appears no record of the 12 trial payments I made across three offered HAMP modifications over the years. After the payments, the modification offers were denied for a host of creative responses (including one denial that I was denied a modification because I already had a modification and was only allowed one; another saying I was current on my mortgage and didn't need a modification). It says NA for a single point of contact.

Another convenient tactic used by Wells is a claim that they didn't receive all documents. That problem hasn't gone away. In this case, my CFPB case included an attachment filed and downloaded to CFPB showing copies of "URGENT – Contact us" notes left on my home front door monthly in one form or another. In emails with my attorney last year, a Wells representative claimed they had no knowledge of the notes. Now without having the notes in-hand, Mr. Good opined that the notes were simply communicating with me that a property inspection took place and not in violation of any agreement related to contacting me. The problem is, the notes say nothing about inspection and demand a call to Wells Fargo Home mortgage number.

Dennis K Obduskey

In response to the CFPB filing, I have filed a new Qualified Written Request to Wells, which they should receive the same day you receive this. I have included a copy. I included copies of the attached door-notes.

I believe Wells continues to engage in document creation to fill holes in their cases, frequently after the fact, which may be consistent with action the OCC took last month reprimanding Wells.

Following are some historic federally documented case issues which will give you a better flavor. These are all actions initiated by me.

FTC:  Federal Register, Vol 75, Number 189, Thursday, September 30, 2010 (page 60369).  The Federal Trade Commission sought public comments related to individuals dealing with mortgage servicers.  Because I had been having problems with Wells Fargo and their designated law firm, I filed two comments which included substantial documentation.  They are accessible by "Googling" my last name and FTC.  One of my far-sighted recommendations?  Require a Single Point of Contact.  To my continued surprise, this was just the kick-off for several years of lack of resolution with Wells.

CFPB: Case 120227-000459 submitted February 27, 2012.  That complaint was ultimately rejected by the CFPB because there appeared to be a difference of opinion related to facts, though the details and numerous attachments are clearly something that the Independent Foreclosure Review would have looked into, should their mission not have been cut short by the OCC.  The problem with the CFPB closure, and I appreciate and respect their efforts, is facts are facts and opinions are opinions.  Facts should be obtainable with research.

OCC: Case 02089486 responded to by the OCC Customer Assistance Group on July 10, 2012 but saying "our office will not be taking further action on your complaint "at this time."

CFPB: Case 150610-001588 submitted June 10, 2015.  This is the complaint related to the Fair Debt Collections Practices Act in which the (new, current) law firm representing Wells failed to provide me with any validation prior to initiating a new foreclosure action in May, 2015, despite my documented response to the law firm's letter within 30 days as the law requires.  Their undated letter to me was received in August, 2014.  The CFPB split the case into a complaint against the law firm, McCarthy and Holthus, LLP and one against Wells.

CFPB: Case 150611-000047 submitted June 11, 2015.  This is the split-off complaint against Wells Fargo and is the action which generated the responses from Todd Good representing Wells, raising more questions than resolving them.  The CFPB is currently reviewing my dispute which was filed against the law firm, McCarthy and Holthus, LLP, in the case above.

CFPB: Case 150713-002132 submitted June 13, 2015.  At the recommendation of the CFPB, who determined that my original complaint (150610-001588) was forwarded to the Federal Trade Commission when perhaps it shouldn't have been, they recommended I re-file the same case.  It is pending review.  The FTC was unable to locate the forwarded CFPB case during a phone call be me last week.

I have included far more documentation than you're used to, I suspect. I'm sorry. I've spoken to our US Senators and other elected officials over the years as well.

Please advise me if you feel there is anything you may wish to research, or obtain additional information from ME about.  You are also welcome to contact my attorney with any related questions: Steven Hill, Riggs Abney, 50 South Steele St., Suite 600, Denver, CO  80209.  Office: 303-298-7392.  Fax: 303-298-7398.  Email: shill@riggsabney.com.

Sincerely,

Dennis K Obduskey
denniso@airbiz.net
(303) 816-1616

cc: Steven Hill
Enclosures

3 °

Dennis K Obduskey
132 Wagon Tongue Road
Bailey, CO 80421

Wells Fargo Home Mortgage
PO Box 10335
Des Moines, IA 50306-0335

Re: Loan 0205097843
*Via USPS Priority Express Mail*

## QUALIFIED WRITTEN REQUEST and REQUEST FOR INFORMATION

7/17/2015

Dear WFHM Representative:

Due to recent correspondence I have received from a representative of Wells Fargo that contradicts previous information, this is a Qualified Written Request to provide me with complete documentation with regard to the mortgage ownership history of my home at 132 Wagon Tongue Rd., Bailey, CO 80421.

Please send me the entire historic MERS MIN record from creation through date of your receipt of this notice, along with copies of all documents, reports, notes, and correspondence related to assignments and endorsements of ownership related to my home. Include any and all documentation related to securitization of the note as well.

A recent copy of documentation received from Wells Fargo by the Consumer Financial Protection Bureau in response to a complaint I filed in June, 2015, has clouded the entire ownership and billing history, as well as other critical financial items on the account. The complaint, CFPB Case #150111-000047 which your firm responded to and I disputed, is under review at the CFPB. That complaint related to the Fair Debt Collection Practices Act and is not the subject of this QWR. The response, however, raised far more questions than provided answers.

Specifically, I am including copies of select pages sent on June 30, 2015, from WFHM Executive Mortgage Specialist Todd Good to the CFPB. He has indicated and provided a documented report apparently generated from your system that claims the owner/assignee of the home is Freddie Mac, 8200 Jones Branch Drive, McLean, VA 22102. His included Loan Information Report states that it was acquired by Freddie Mac on June 18, 2007.

Separately, an "Assignment of Deed of Trust" which he also included was signed by an alleged MERS Assistant Secretary on May 3, 2011, that claims Wells Fargo was the assignee "the day and year first above written," which implies May 31, 2007. Please document the details of that and all assignments and include details for how the owner of the deed became Freddie Mac as is represented in Mr. Good's letter to the CFPB. Include interim assignments as well.

Additional issues:

In the "Loan Information Report" supplied to the CFPB, Wells documentation says that this is a "Conventional Loan with PMI," while documents included say this is an "Interest Only" loan. Please explain the discrepancy.

Dennis K Obduskey

Note on that same report, "Current Home Preservation Activities" are listed as NA, including no single point of contact. Given that there were a number of loan modifications offered, trial payments made, then rejected after the fact (12 payments on three different loan modifications), since 2011, please clarify how the ever changing single point of contact which my attorney communicated with at different times, disappeared. For my records, provide a listing and succession of each single point of contact during each period of time. Note that dual tracking and lack of a single point of contact is addressed in Colorado foreclosure laws.

Finally, please reconcile and document the complete financial history and include detail about all charges and credits. Please include details about how each trial payment was applied.

If you review just the 1-page "Consumer Account Activity Statement" Mr. Good provided the CFPB, you will note numerous charges during 2014 and 2015. Realize this is just a snapshot and does not go back to the 2007 inception as I am requesting. This single page includes many unspecified attorney fees (to what law firm for what service?), payment for two title policies, and the posting of a notice that in 2014 could not have happened. Please explain the purpose of the title policies and why I would be responsible for paying for them.

In short, given the lack of clarity and deficiency of information, the entire financial history from beginning to current is in doubt and needs detailed documentation. This is a main function of a QWR to clarify information with the loan servicer. I have enlarged a portion of the one-page document to ease your review.

Note that Wells has had four different law firms involved since 2009 and three foreclosure actions that were started, then withdrawn. Please explain the history of charges to whom, in detail, for what and how each action by each different firm is chargeable and due to the account.

Finally, Mr. Good explained that the notes left on my door monthly were simply notifications that you were inspecting the home to verify its occupancy and livability. Please explain how your internal controls work given that the notes left behind have no reference to inspection and insist that I immediately contact WFHM. Are each of these notes also being charged to the account? I have included a copy of the most recent one.

Please note that I am forwarding a copy of this letter and attachments to the Comptroller of the Currency as an addendum to Case #02089468 from a complaint filed in 2012. I have included a copy of a letter from the OCC for your reference.

My attorney and I anxiously await your reply.

In this case, you are welcome to forward the documentation to my attorney, Steven Hill, Riggs Abney, 50 South Steele Street, Suite 600, Denver, CO 80209. Office Phone: 303-298-7392. Office Fax: 303-298-7398.

Sincerely,

Dennis K Obduskey

Cc: Steven Hill
Cc: Office of Comptroller of the Currency
Enclosures

2



Comptroller of the Currency
Administrator of National Banks

July 10, 2012

Dennis Obduskey
132 Wagon Tongue Road
Bailey CO 80421

Re: Case#: 02089486
WELLS FARGO BANK, NATIONAL ASSOCIATION

Dear Mr. Obduskey:

This letter is to notify you that your complaint filed with the Customer Assistance Group of the Office of the Comptroller of the Currency (OCC) has been received. The above institution has notified our office that the foreclosure process was active on your primary residence between January 1, 2009 and December 31, 2010; therefore, your loan will be reviewed under the Independent Foreclosure Review (IFR), as required by the Consent Order placed on the above bank.

Information about the IFR process can be found at:

www.IndependentForeclosureReview.com

Questions can be directed to 1-888-952-9105.

Since your loan will be reviewed under the IFR our office will not be taking further action on your complaint at this time. All future correspondence regarding your complaint will come from the independent consultants.

Sincerely,

*Customer Assistance Group*

---

The Customer Assistance Group's consumer complaint process is a service that is provided to customers of national banks and federal savings associations (thrifts). Information provided within this letter is specifically related to an individual consumer complaint and should not be construed as either a legal opinion of the OCC or a supervisory action. If you are not satisfied with the resolution of your complaint, you may wish to consult legal counsel so as to preserve your rights.

Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, Texas 77010-9050
Phone: (800) 613-6743, FAX: (713) 336-4301
Internet Address: www.helpwithmybank.gov

Dennis Obduskey
132 Wagon Tongue Road
Bailey, CO 80421
November 7, 2011

Office of RESPA and Interstate Land Sales
Department of Housing and Urban Development
451 Seventh Street S.W., Room 9154
Washington, DC 20410                                        *via certified mail*

Dear RESPA Administrator:

The attached copy of a Qualified Written Request was sent this past June to Wells Fargo Home Mortgage. via NACA, Neighborhood Assistance Corporation of America, a non-profit HUD certified counseling agency. I have no correspondence from either Wells Fargo or NACA reflecting acknowledgement or answers related to the request; please consider this an official complaint directed toward my loan servicer.

I also still expect to receive the information via NACA. with a copy to me at my home address.

I am also copying the office of the Colorado Attorney General. Wells Fargo Home Mortgage, NACA, and Colorado US Senators Michael Bennet and Mark Udall. Although I have communicated some historical information to Sen. Bennet's office in the past, I have tried to resolve this problem without external help except via NACA. I would not have gotten this far without them.

As I understand it, this is well past the legal requirement for returning the requested information, although I reminded the servicer in my on-line NACA web file, on July 8, 2011 when I accepted a loan modification offer requiring me to make trial payments on August 1, September 1 and October 1, 2011, that I still expected a full response to the QWR.

I am surprised and disappointed that I have not received any QWR documentation; especially given I had expected to receive promised loan modification documents after my third and final "trial" payment made on October 1, 2011 as agreed. Modification documents have not been received, either, although promised and confirmed at a Home Preservation Workshop organized by Wells Fargo Home Mortgage in July.

Not only does my QWR relate to the entire "payment" history and documentation of fees charged and a number of other "trial payments" during the past 2-3 years, I also desire to verify all records related to transfer of the Promissory Note, copies of appropriate legal recorded records related to sale and transfer, and all information related to loss mitigation and other calculations as referenced in the original QWR.

As this issue began when Wells Fargo Home Mortgage *solicited me* in December of 2008 for a loan modification, then botched the documents and required me to begin what turned into an extended 2 ½-year process that should have been long since been completed, it's time to reasonably and accurately get through this and let me get on with my life at the home I've lived at since 1998.

Although I cannot afford it, I also intend explore other possible legal actions.

Sincerely,

Dennis K Obduskey

Enclosures

Office of RESPA and Interstate Land Sales
November 7, 2011
Page 2


cc:

Wells Fargo Home Mortgage
PO Box 10335
Des Moines, IA  50306          Loan: 0205097843          *certified*

NACA
Qualified Written Request
3607 Washington St
Boston, MA  02130          NACA ID: 632384          *certified*

Office of the Attorney General
1525 Sherman St., 7ᵗʰ Floor
Denver, CO  80203

U.S. Senator Michael Bennet
458 Russell Senate Office Building
Washington, DC 20510

U.S. Senator Mark Udall
Hart Office Building Suite SH-328
Washington, DC 20510

## QUALIFIED WRITTEN REQUEST

Clients Names: 1)     Dennis Keith Obduskey

          2) _____

Property Address:     132 Wagon Tongue Road, Bailey, CO  80421

Lender:         Wells Fargo Home Mortgage

Loan Number: _____ 0205097843

Mailing Address:
    NACA
    3607 Washington
    Boston, MA 02130

Dear Lender,

You are the current Loan Servicer of my home mortgage as identified above. Today, I am uncertain as to who the current Holder and Owner of the original Note and deed of trust is because the transfer and ownership of my loan, as has proven to be the case with thousands of other home loans across America, could have been impacted by recent issues concerning people signing transfer documents without knowledge or authority to do so. This has resulted in foreclosure moratoriums in many instances (i.e. the notorious "Robo Signers") along with foreclosure reversals (i.e. Massachusetts Supreme Court ruling).

By way of this Qualified Written Request I am asking that you as my current Loan Servicer, send me all pertinent information about fees, costs, escrow accounting, loan ownership, loan servicing transfers, loan ownership transfers, and further information concerning my home loan.

This is a "qualified written request" pursuant to the Real Estate Settlement Procedures Act (section 2605 (e)).

I request the following information:

1.        A complete payment history which lists the dates and amounts of all payments we have made on the loan to date, and shows how each payment was applied or credited (whether to principal, interest, escrow, suspense, or some other treatment);

2.        A breakdown of the amount of claimed arrears or delinquencies on the account including an itemization of all fees and charges you claim are currently due;

3.        The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to the account;

4.        The payment dates, purpose of payment, and recipient of all escrow items charged to the account along with my Escrow/Impound Account Agreement;

5.        A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, sent within the last three years;

6.        The current balance in any suspense account as of  today's date and the reason why such funds were deposited in the account;

7.        The name and address of the entity that legally is the "Holder" of the promissory note secured by the deed of trust in the mortgage loan referenced above. If your answer is the same as your answer to #7 above, you may simply reply "same as #7";

8. The names of all entities to which the Promissory Note referenced above has been sold or otherwise transferred at any time, and the dates the each sale or transfer of the Note occurred along with recorded evidence for each sale and transfer;

9. A copy of the Note referenced above showing all endorsements that have occurred, together with any addendums to the note;

10. The names of all entities to which this mortgage or deed of trust has been assigned, and the dates that each assignment occurred. If any assignment in blank has occurred, include it in the list of dates with the notation "in Blank" in place of the name of an entity;

11. A copy of each of the assignments reflecting each assignment referenced in #11, above;

12. A description of all loss mitigation and foreclosure avoidance steps taken in regard to this mortgage loan, including all calculations concerning debt-to-income and net-present-value determinations and all documents regarding loss mitigation;

13. The name and the address of the Owner, of the Trustee, and of the Document Custodian Holder of my Promissory Note secured by the Deed of Trust in the mortgage loan referenced above;

14. The Net Present Value ("NPV") calculation for my home loan articulating your assessment of my home loan's value and method of valuation (i.e. what to do with my home loan in relation to investors' interests);

15. Pooling and Servicing Agreement;

16. Recording conditions for each mortgage assignment and sale;

17. Name and contact information of the Sub-Servicer of my home loan;

18. First Payment Notice;

19. Initial Uniform Residential Loan Application:

20. Final Uniform Residential Loan Application;

21. Initial Truth-In-Lending disclosure;

22. Final Truth-In-Lending disclosure;

23. Initial Good Faith Estimate;

24. Final Good Faith Estimate;

25. Lender Master Servicing Agreement for Lender serviced home mortgage loans;

26. Lender's Servicing Agreement for mortgage loans assigned to approved Sub-Servicers;

27. Mortgage Loan Commitment;

28. Final HUD-1 Settlement Statement;

29. Prepayment Disclosure;

30. Section 32 High Cost Disclosure;

31.   Applicable Tangible Net Benefit Tests;

32.   Appraisal;

33.   4506-T Form;

34.   Mortgage Loan Commitment or Underwriting Approval issued by the Originator of this home loan;

35.   Notice of Right To Cancel;

36.   Transmittal Summary – Form 1008;

37.   Disclosure given to the consumer at application outlining how interest-only mortgages work;

38.   Initial ARM disclosures;

39.   ARM Handbook;

I authorize you as my Loan Servicer to forward each of the thirty-nine RESPA-requested items listed above to NACA at 3607 Washington,  Thanking you in advance for your cooperation in honoring my "Qualified Written Request", as is required of you by the Real Estate Settlement Procedures Act (section 2605 (e)).

Sincerely,

_____          6/15/2011
Client Name  Dennis K Obduskey                    _____
                                                   Date

_____          _____
Client Name                                        Date

Cc: HUD RESPA
    State Attorney General