

Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

August 27, 2015

Steven Hill
Riggs, Abney, Neal, Turpen, Orbison, & Lewis
50 South Steele Street, Suite 600
Denver, CO 80209

Subject: Resolution to the inquiries received for the mortgage account of Dennis K. Obduskey
account number 0205097843

Dear Mr. Steven L. Hill:

Addressing our customer's concerns is important to us and I thank you for the opportunity to assist you. I'm responding on behalf of Wells Fargo Home Mortgage to the request received in our office on July 20, 2015, and July 28, 2015. We've carefully considered what we can do and are providing our response.

We've determined some of Mr. Obduskey's concerns were previously addressed by us, and we didn't find you had enclosed any new information or significantly different details which would change our response. Without any new or different information, the guidelines established by the Consumer Financial Protection Bureau (CFPB) do not require us to perform further research. We're enclosing our previous responses sent dated December 09, 2011, January 10, 2012, June 13, 2012, July 16, 2012, August 15, 2012, January 18, 2013, and June 30, 2015. We will be addressing the new items listed below.

Please know that some of his concerns included assertions that regarded all aspects of this account but specified no specific dispute. As a result, we are unable to research an overbroad notice of error without information to specifically research.

To provide additional clarification, assertions of errors regarding substantially all aspects of a mortgage loan, including errors relating to all aspects of mortgage origination, mortgage servicing, and foreclosure, as well as errors relating to the crediting of substantially every customer payment and escrow account transaction requires a specific dispute to be outlined. We ask this so that we can research your concerns and provide only the best customer service and resolution.

However, we thank Mr. Obduskey for taking the time to share his experience with us. We value his feedback and look to our customers and their authorized parties like you for your opinions about how we can provide the service our customers expect and deserve. We apologize for any frustration this experience caused.

**Mr. Obduskey's had the following concerns:**

- Mr. Obduskey's concerns about the Loan Information Report
- Mr. Obduskey's concerns about documents conveying Interest Only
- Mr. Obduskey's request for information about the Electronic Registration System (MERS)
- Mr. Obduskey's statement that we did not respond to a written request in 2011
- Mr. Obduskey's concerns about a hand written "void" on the Note
- Mr. Obduskey's concerns about our foreclosure actions
- Mr. Obduskey's request for a payment history from 2007, through current

EXHIBIT - 14

- Mr. Obduskey's concerns regarding the Independent foreclosure review
- Mr. Obduskey's concerns regarding previous reviews for payment assistance

Please find our responses to the concerns raised in the inquiries addressed below.

### Mr. Obduskey's concerns about the Loan Information Report

Mr. Obduskey expresses concerns about the information conveyed on the Loan Information report about the following items:

- Type of Loan
- Current Home Preservation Activities

#### Type of Loan

To provide clarification, a lender may require Private Mortgage Insurance (PMI) if the loan-to-value (LTV) is more than 80 percent of the property's market value. PMI protects the lender from financial loss if you fall behind in your payments. PMI can be collected on a monthly basis, the lender may offer a higher interest rate to cover the cost of the PMI, or the lender can require an upfront Mortgage Insurance Premium (MIP) to be paid at closing.

While you do not pay PMI on a monthly bases, since your LTV is more than 80 percent of the property's market value your account does carry PMI.

#### Current Home Preservation Activities

Please know that when a customer request us to review an account for possible payment assistance options and we determine a new review is warranted, a single point of contact is assigned to assist our customer through the review process. Since we are unable to govern circumstantial situations with our Team Members, a new single point of contact may be assigned if we determine it necessary.

I have confirmed that Mr. Obduskey was assigned a single point of contact for each review previously conducted. However, at the time of our June 30, 2015, response and as of the date of this letter, his account is not being review for payment assistance and a single point of contact is not assigned at this time.

### Mr. Obduskey's concerns about documents conveying Interest Only

Please review Page 01, Section 3(A), of the Interest-Only Period Fixed Rate Note which conveys that Mr. Obduskey's payments will be applied to interest only for the first 120 months, and then will be applied to principal and interest thereafter. As a result, the Note's name includes, "Interest-Only Period".

### Mr. Obduskey's request for information about the MERS and assignments

At the closing of Mr. Obduskey's loan, he executed a Deed of Trust (Security Instrument), which secures the named property as collateral for the loan. The Security Instrument names Mr. Obduskey as the "Borrower" and named First Magnus Financial Corporation, An Arizona Corporation, as the "Lender".

Additionally, we can verify that at closing, the title on the loan was in the name of MERS, as nominee for First Magnus Financial Corporation, An Arizona Corporation, Lenders successors, and assigns. MERS is an electronic storage warehouse responsible for tracking the ownership rights relating to mortgage loans.

Obduskey
August 27, 2015
Page 03

The Security Instrument also provides for the terms and conditions of the loan, including the right to sell the Note or change the loan servicer. Please refer to Page 12, Section 20, of the Security Instrument for additional information regarding the investor's rights to sell the Note or change the loan servicer. In addition, I would like to reaffirm that the sale of a loan on the secondary market is common practice within the mortgage industry.

On June 18, 2007, we became the servicer and effective August 01, 2007, Freddie Mac became the investor of Mr. Obduskey's account. As the servicer, we collect payments, pay escrow items such as taxes and insurance, answer questions, and provide payoff information, workout opportunities, home preservation, as well as other duties on behalf of the investor over the life of the account.

Please note that intervening assignment(s) are sent to be recorded once an account is paid in full or where applicable based on account status. Mr. Obduskey's account was past due and as a result MERS executed an Assignment of Deed of Trust on May 03, 2011, which was recorded with the Park County Clerk Ms. Debra A. Green on May 11, 2011. The Assignment of Deed of Trust assigned all rights, title, and interest to the Security Instrument to us allowing us the right to initiate any acceleration allowable by the Note, Security Instrument, and applicable State Law.

**Mr. Obduskey's statement that we did not respond to a written request in 2011**

We had previously responded to Mr. Obduskey's concern on January 18, 2013. On June 27, 2011, we received a Qualified Written Request (QWR) in addition to some financial documents that were being requested to continue a review for payment assistance options. Due to a processing oversight, we had considered this document as part of Mr. Obduskey's submission of financial documents.

However, our records indicate we responded to the issues detailed in the QWR, as well as additional correspondence received from Mr. Obduskey, on December 09, 2011. We have enclosed this response for your records.

**Mr. Obduskey's concerns about a hand written "void" on the Note**

After a thorough review of Mr. Obduskey's account we have been unable to locate the hand written "void" on a Note we have sent. If you have specific details you'd like us to consider or a copy of the Note Mr. Obduskey is referring to, please send it to us by fax or mail at:

   Wells Fargo Home Mortgage
   P.O. Box 10335
   Des Moines, IA 50306-0335
   Fax: 1-866-278-1179

**Mr. Obduskey's concerns about our foreclosure actions**

On June 04, 2009, the loan was referred to outside counsel to initiate foreclosure proceedings. The foreclosure action was a direct result of the loan showing due for the October 01, 2008, through June 01, 2009, mortgage installments. Foreclosure proceedings continue until a viable plan or modification have been approved and/or executed documents and the first payment of that plan has been received.

On June 25, 2009, we approved Mr. Obduskey's account for the government's Home Affordable Modification Program Trial Period Plan (TPP). We received Mr. Obduskey's first payment towards the TPP on July 24, 2009. Once the payment was received, the foreclosure proceedings were suspended.

Obduskey
August 27, 2015
Page 04

On January 05, 2010, we had not received the necessary documents to review Mr. Obduskey for payment assistance. As a result our review was closed. At that time Mr. Obduskey's account was due for the January 01, 2009, through January 01, 2010, payments. As a result foreclosure proceedings resumed.

An additional review for payment assistance options was completed on February 08, 2010. The review resulted in the approval of an additional TPP. On March 01, 2010, we received the first payment in the TPP. Once again foreclosure proceedings were suspended.

After completing our review on September 27, 2010, foreclosure proceedings resumed as we were unable to find a viable program for which he qualified for. As the account was due for the April 01, 2009, through September 01, 2010, payments foreclosure proceedings were resumed.

On July 06, 2011, we approved another TPP for Mr. Obduskey's account. After receiving the first payment in the TPP, foreclosure proceedings were suspended on August 02, 2011. As Mr. Obduskey had not provided proof that the liens and judgments had been cleared we discontinued our review on December 15, 2011. At the time our review was discontinued, the account was due for the June 01, 2009, through December 01, 2011, payments. As a result foreclosure proceedings resumed. On October 04, 2012, we removed the account from foreclosure.

We most recently initiated foreclosure proceedings on December 17, 2012. At that time the account was due for the June 01, 2009, through December 01, 2012, payments. A reinstatement quote has been enclosed for Mr. Obduskey's reference. The quote is valid through September 18, 2015. Currently, there is a foreclosure sale date scheduled for October 07, 2015.

Foreclosure proceedings result in fees being assessed to the account. Per the terms of the Note and Security Instrument these fees become additional debt of the customer. I have enclosed an account history from January 01, 2007, through the date of this correspondence. The account history provides for an explanation of these fees.

### Mr. Obduskey's request for a payment history from 2007, through current

Enclosed is an account history from January 01, 2007, through the date of this correspondence. This history shows when payments were received, how they were applied, and payments made from the account on your behalf, such as your taxes and insurance. The history also shows details about any fees charged to your account, including the date the fees were charged, any amounts paid toward the fee balance, and any fees which were removed.

### Mr. Obduskey's concerns regarding the Independent foreclosure review

On January 7, 2013, ten mortgage servicers, including Wells Fargo, reached an agreement with the Office of the Comptroller of the Currency (OCC) and the Federal Reserve Board (FRB) to end their Independent Foreclosure Review programs.

Under the agreement, customers would receive financial compensation if their primary residence was in foreclosure between January 1, 2009, and December 31, 2010. Customers didn't need to take any action to participate, and receiving a payment doesn't necessarily mean any improper foreclosure practices occurred.

We weren't involved in the distribution of these payments. Rust Consulting, Inc. distributed the funds under the direction of the OCC and FRB.

Obduskey
August 27, 2015
Page 05

### Mr. Obduskey's concerns regarding previous reviews for payment assistance

We recognize the concerns that Mr. Obduskey has with the previous reviews for payment assistance. We have responded to these concerns previously. As our position has not changed, we enclosed these responses.

We can review your account for additional payment assistance options only if his financial situation has changed since our last review. If your financial situation has changed, please contact our Home Preservation department to discuss what additional documentation is required to initiate a new review. We've provided their contact information in the "Going forward – What are my next steps?" section of this letter.

### Going forward – What are my next steps?

Mr. Obduskey may contact our Home Preservation department at 1-800-678-7986. Specialists are available to assist Monday through Friday, 7:00 a.m. to 10:00 p.m.; and Saturday, 8:00 a.m. to 2:00 p.m. Central Time. To ensure our representatives provide the best options, he should have his financial information including information from his paystub or federal tax return available.

If you have any additional questions or need clarification regarding the information provided in this letter, please contact me directly at 1-800-853-8516, extension 20520. I am available to assist Mr. Obduskey Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If Mr. Obduskey requires immediate assistance and I am unavailable, other representatives are available to assist Mr. Obduskey at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

*[signature]*

Kristopher Peterson
Executive Mortgage Specialist
Customer Care and Recovery Group

Enclosure(s)

CC / Enc.:   Office of the Comptroller of the Currency
             Case number: 03043132

Wells Fargo is required by the Fair Debt Collection Practices Act to inform Mr. Obduskey that, as the loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if the borrower has received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo will only exercise its rights against the property and is not attempting any act to collect the discharged debt from the borrower personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact the borrower before 8 a.m. or after 9 p.m. They may not harass the borrower by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call the borrower at work if they know or have reason to know that they may not receive personal calls at work. For the most part, collectors may not tell another person, other than the attorney or borrower's spouse, about the debt. Collectors may contact another person to confirm the borrower's location or enforce a judgment. For more information about debt collection activities, Mr. Obduskey may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

EX003/PMC/co1461818/co1452454/ge4063019/cl708