**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:15-cv-01734-RBJ

DENNIS OBDUSKEY, an individual,

    Plaintiff,

v.

WELLS FARGO, WELLS FARGO BANK,
WELLS FARGO & CO., WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE, and
MCCARTHY AND HOLTHUS LLP,

    Defendant.

___

**WELLS FARGO BANK, N.A.'S RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
___

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), also improperly named as Wells Fargo, Wells Fargo Bank, Wells Fargo & Co., and Wells Fargo Home Mortgage, hereby submits its response to Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order ("Motion").

**INTRODUCTION**

Plaintiff's Motion should be denied because it is not supported factually with either a verified complaint or affidavit, and because the elements required to be shown for a preliminary injunction are not satisfied. Instead, the Motion generally repeats the same vague allegations present in the Complaint, and upon which Wells Fargo moved for dismissal. For the reasons set forth in Wells Fargo's Motion to Dismiss (Dkt. 14, 37), this Motion should fail because Plaintiff cannot establish the requisite substantial likelihood of success on the merits that is required

before a preliminary injunction may issue. In addition, Plaintiff cannot establish that any of his claims entitle him to an injunction against foreclosure, or that he will suffer an injury not redressable through money damages. Finally, neither the balance of harms, nor the public interest, favor an injunction in this situation. Wells Fargo thus respectfully requests that this Court deny the Motion.

## BACKGROUND

In May 2007, Plaintiff obtained a loan from Magnus Financial Corporation for $329,940, secured by his property in Bailey, Colorado. Shortly thereafter, Freddie Mac acquired the loan. Wells Fargo services the loan on behalf of Freddie Mac. (Dkt. 1, Exs. 12, 16.)

In 2008, Plaintiff received an offer to apply for a loan modification. Wells Fargo sent him the loan modification paperwork in January 2009, but Plaintiff did not sign and return the correct paperwork, so Wells Fargo did not modify the loan. (*Id.*, Ex. 5.)

Plaintiff defaulted on the loan on June 1, 2009. (*Id.*, Exs. 5, 12, 16, 24, 26.) Wells Fargo then initiated non-judicial foreclosure proceedings pursuant to the Deed of Trust. (*Id.*, Ex. 27.) In the meantime, Plaintiff was approved for successive Home Affordable Modification Program ("HAMP") Loan Trial Period, under which Plaintiff made certain payments, although none resulted in permanent modifications. (*Id.*, Ex. 5.) The third and final HAMP Loan Trial Period did not lead to a final modification because of significant judgments and liens on the property, including a federal tax lien exceeding $90,000. (*Id.*) A recent title review confirms that tax lien still encumbers the property, as well as a newer tax lien, bringing Plaintiff's total federal tax lien

encumbrances to over $100,000. (Declaration of Christopher Diedrich ("Diedrich Decl."), Ex. A at 22-23.)[1]

The loan has never been modified, and Wells Fargo has not yet completed the foreclosure proceedings. Plaintiff's loan remains in default. (Dkt. 1, Ex. 12.) The foreclosure sale is set for July 20, 2016. (Motion at 3 ¶ 7.)

Plaintiff filed this lawsuit on August 12, 2015, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Colorado Consumer Protection Act ("CCPA"), and claims for defamation, extreme and outrageous conduct, and commencement of an unlawful collections action. (Dkt. 1.) Wells Fargo timely moved to dismiss on September 29, 2015. After submitting overlong response briefs, Plaintiff filed a conforming response on December 16, 2015, and the Motion to Dismiss has been fully briefed since January 4, 2016.

Although the judge in the Rule 120 proceeding authorized the foreclosure on April 21, 2016 (*see* Motion, Ex. 3), Plaintiff waited until July 11, 2016 to file this Motion, the week before the foreclosure is scheduled to proceed.

**LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established." *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989); *see also*

---

[1] Wells Fargo requests that this Court take judicial notice of the federal tax liens as they were recorded with the Park County Clerk and Recorder's Office and are thus matters of public record. *See, e.g.*, *Kaspryzk v. PNC Bank, N.A.*, No. 13-cv-00247-RBJ-KMT, 2013 WL 3895069, at *3 n.1.

*Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (holding that "the right to relief must be clear and unequivocal"). Thus, preliminary injunctive relief "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotations omitted).

To obtain a preliminary injunction, a movant must establish that: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Because Plaintiff gave Wells Fargo notice of the Motion, "there is no cause to consider an *ex parte* temporary restraining order." *See, e.g.*, *Abraham v. Simpson*, No. 11-cv-0637-RBJ-MJW, 2011 WL 5925522, at *2 (D. Colo. Nov. 28, 2011).[2]

## ARGUMENT

Plaintiff cannot satisfy the burden to obtain a preliminary injunction. As argued in the Motion to Dismiss, Plaintiff is not only unlikely to succeed on the merits, he cannot even state a claim upon which relief can be granted in his favor. (*See* Dkt. 14, 37.) Nor can Plaintiff point to a claim that would entitle him to an injunction against foreclosure, or explained how a monetary remedy does not suffice. Finally, Plaintiff cannot show that the balance of harms favors an injunction or that an injunction would be in the public interest. The Motion should therefore be denied.

---

[2] Further, a temporary restraining order requires "specific facts in an affidavit or a verified complaint," *see* Fed. R. Civ. P. 65(b)(1)(A), and Plaintiff has filed neither a Verified Complaint nor an affidavit.

## I. PLAINTIFF CANNOT ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

In Plaintiff's Motion, there is little discussion of his likelihood of success on the merits, just a three-paragraph description of the preponderance of the evidence standard and a plea to allow Plaintiff to "examine" its defenses "in a proper setting." (Dkt. 39 at 4–5.) This showing, with no authenticated documentation or argument on the specifics of Plaintiff's claims, is deficient, and is sufficient reason for this Court to deny the Motion without further review. As explained below, however, and in Wells Fargo's Motion to Dismiss, each of Plaintiff's claims cannot succeed.

### A. Plaintiff's FDCPA claim cannot succeed.

Plaintiff's FDCPA claim fails for several reasons, but beyond the pleading deficiencies identified in Wells Fargo's Motion to Dismiss, this claim cannot succeed for three main reasons.

First, the FDCPA applies only to "debt collectors," *see* 15 U.S.C. 1692, and loan servicers like Wells Fargo are not debt collectors because a "debt collector" excludes "any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F). Because Wells Fargo began servicing Plaintiff's loan in 2007 and the loan went into default in 2009 (*see* Dkt. 1, Exs. 5, 12, 16, 24, 26), Wells Fargo is not a debt collector within the meaning of the FDCPA. *See, e.g.*, *Garrett v. BNC Mortgage, Inc.*, 929 F. Supp. 2d 1120, 1128 (D. Colo. 2013); *Schwitzer v. Wells Fargo Bank, N.A.*, No. 12-CV-01367-RBJ-MJW, 2013 WL 607832, at *5 (D. Colo. Feb. 19, 2013); *Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210, 1231 (D. Colo. 2011) *aff'd in part* 711 F.3d 1173 (10th Cir. 2013). Thus, the FDCPA does not apply.

Second, as this Court has previously held, non-judicial foreclosures such as the one challenged here fall outside the scope of the FDCPA. *See Schwitzer*, 2013 WL 607832, at *5; *see also Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1354 (D. Utah 1999).

Third, the FDCPA claim is untimely. FDCPA claims are subject to a one-year statute of limitations, accruing from the date the violation occurs. *See* 15 U.S.C. § 1692k(d). Because Plaintiff's Complaint is directed at activities that took place in 2008, and not any actions that took place on or after August 13, 2014, the claim is time-barred.

### B. Plaintiff's CCPA claim cannot succeed.

As outlined in the Motion to Dismiss, Plaintiff's CCPA claim similarly fails for multiple reasons, including failing to plead facts related to the allegedly deceptive behavior. (*See* Dkt. 14 at 6-10.) Beyond vague allegations of misrepresentations, just what is alleged to be deceptive is unclear, but Plaintiff makes two specific allegations, either in the Complaint or in response to the Motion to Dismiss: (1) Wells Fargo misrepresented the true owner of the note (Dkt. 1, p. 5, ¶ 14); and (2) the assignment was somehow improper, meaning Wells Fargo is not the "real party in interest" (Dkt. 35 at 6-7; Dkt. 39 at 6-7). The CCPA claim cannot succeed, however, for five primary reasons.

First, Plaintiff's allegations that Wells Fargo misrepresented the true owner of the note are belied by his own documents. Wells Fargo repeatedly disclosed itself as the servicer of the loan, on behalf of the investor, Freddie Mac, and MERS as the beneficiary on behalf of the lender and its successors and assigns. (Dkt. 1 at Exs. 5, 12, 13, 14, 16, 20, 24, 27.) Thus, there can be no deceptive trade practice based on these allegations and the attachments to the Complaint. *See, e.g.*, *Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1250-51

6

(D. Colo. 2011); *see also Frane v. JP Morgan Chase Bank, N.A.*, No. 12-cv-00821-RM-BNB, 2015 WL 4606537 (D. Colo. Aug. 3, 2015).

Second, Plaintiff lacks standing to challenge the assignment of the loan documents. *See Roe v. Aegis Wholesale Corp.*, No. 13-CV-03040-KMT, 2014 WL 4746721, *7 (D. Colo. Sept. 24, 2014) (noting "ample case law holding that a borrower-plaintiff lacks standing to challenge the validity of assignments of a promissory note because the plaintiff is not a party" thereto) (citing cases). Nor is Wells Fargo obligated under Colorado law to produce the original note before proceeding with a non-judicial foreclosure. *Fick v. US Bank Nat. Ass'n*, No. 11-CV-03184-WYD-KLM, 2012 WL 5464592, *5 (D. Colo. Sept. 10, 2012), *adopted by* 2012 WL 5464614 (D. Colo. Nov. 8, 2012).

Third, the bulk of the alleged misrepresentations or otherwise wrongful actions—*i.e.*, anything that occurred before August 12, 2012, meaning anything related to the initial loan modification efforts in 2008-09 or the three HAMP Loan Trial Periods in 2009, 2010, and 2011 (*see* Dkt. 1 Ex. 5)—are barred by the three-year statute of limitations. *See* C.R.S. § 6-1-115.

Fourth, any misrepresentations relating to Plaintiff's loan or any proposed modification of it are necessarily barred by the Credit Agreement Statute of Frauds. *See, e.g.*, *Wagner v. Universal Fin. Group, Inc.*, No. 09-cv-00038-PAB-BNB, 2010 WL 866079, at *3-6 (D. Colo. Mar. 5, 2010). This is because: (1) Plaintiff is a debtor, as he is obligated on the note, *see* C.R.S. § 38-10-124(1)(c); (2) Wells Fargo is a creditor, because it assumed the original loan agreement, modified it through HAMP Loan Trial periods, and offered to extend credit through a modification in 2009, *see* C.R.S. § 38-10-124(1)(b); and (3) the alleged representations relate to a credit agreement of more than $25,000. *See* C.R.S. § 38-10-124(1)(a)(I)-(III). Having thus

7

satisfied the three elements of a statute of frauds defense, there can be no CCPA claim based on any attempted or completed loans or loan modification transactions.

Fifth, and finally, there can be no public impact, a necessary element of a CCPA claim, in what is a purely private transaction. *See, e.g.*, *Van Rees v. Unleaded Software, Inc.*, --- P.3d ----, 2013 COA 164, ¶ 39 (2013) ("[A] CCPA claim is not actionable if it pertains to private conduct that does not affect the public."), *rev'd on other grounds*, 2016 CO 51.  Because all Plaintiff has alleged to be deceptive is conduct that wronged him personally and not the public at large, there can be no CCPA claim.

### C.     Plaintiff's defamation claim cannot succeed.

Plaintiff's defamation claim is premised on two things: (1) false credit reporting; and (2) filing documents related to the foreclosure action.  Neither supports a defamation claim.

First, Plaintiff's defamation claim arising from false credit reporting is untimely, as he admits it began to accrue on January 18, 2013, which is outside the applicable one year statute of limitations. *See* C.R.S. § 13-80-103(1)(a).  Additionally, the allegedly defamatory statement on the credit report—"Consumer disputes after resolution" (Dkt. 35 at Ex. 18)—is not false. According to the allegations, Plaintiff (*i.e.,* the "consumer") does dispute how Wells Fargo resolved the matter.

Second, any Wells Fargo statements on notices related to the foreclosure cannot support a claim.  As an initial matter, the 2009 foreclosure notices are outside the one year statute of limitations, *see* C.R.S. § 13-80-103, barring the claim.  Further, the statements are not false—Plaintiff does not deny that he has been in default since June 1, 2009 or that the foreclosure is proceeding pursuant to the Deed of Trust.  There can be no defamation based on true statements.

### D. Plaintiff's extreme and outrageous conduct claim cannot succeed.

Plaintiff's extreme and outrageous conduct claim appears to be based on two theories: (1) that Plaintiff "has been forced to deal with three law firms regarding the debt"; and (2) Wells Fargo "failed to provide accurate information pertaining to the current note holder." (Dkt. 1 at 15-16.) Not only is the second theory baseless because of the documents Plaintiff attached to his Complaint (*see* Section I.B, *supra*), but the entire claim fails because (1) it is time-barred, and (2) Plaintiff has identified nothing that could be deemed extreme and outrageous.

First, the 2 year statute of limitations bars any claim based on "extreme and outrageous" conduct that occurred prior to August 12, 2013. *See* C.R.S. §13-80-102; *Jacobs v. Ocwen Loan Serv., LLC*, No. 13-cv-02518-REB-BNB, 2014 WL 3893357, at *13-15 (D. Colo. June 16, 2014), *adopted by* 2014 WL 3893325, at * 3 (D. Colo. Aug. 7, 2014) (emotional distress claim barred by two-year limitations period).

Second, Plaintiff has identified no conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). Nor is there proof of an "extreme act, both in character or degree" or a pattern of conduct showing the "infliction of severe mental suffering was calculated or recklessly or callously inflicted." *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994). Instead, the conduct described—requesting documentation and pursuing foreclosure actions—does not extend beyond a lender exercising its contractual right to foreclose. Courts routinely hold that conduct related to foreclosure proceedings is not outrageous:

Now:

> It was neither extreme nor outrageous for an entity possessing and filing the requisite documentation under Colorado law to institute foreclosure proceedings on borrowers in default. Nor was it extreme or outrageous for defendant to post the notice on plaintiffs' front door, which . . . serves the purpose of providing notice to any occupants of action that will be taken to preserve the property.

*Mbaku v. Bank of Am., N.A.* ("*Mbaku II*") No. 12-CV-00190-PAB-KLM, 2013 WL 425981, *8 (D. Colo. Feb. 1, 2013); *see also Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291943, at *18-19 (D. Colo. June 17, 2013), *rejected in part on other grounds*, 2013 WL 5291947 (D. Colo. Sept. 18, 2013) (alleged misconduct not enough to support claim despite the "inconvenience, pain, and suffering the threat of losing their home may have caused"); *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1043–44 (D. Colo. 2012); *Hewitt v. Pitkin County Bank & Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995). Thus, this claim is unlikely to succeed.

### E.   Plaintiff's unlawful collections action claim cannot succeed.

Plaintiff's unlawful collections claim appears to be based on a theory that Wells Fargo's foreclosure action is time-barred. It is not.

First, Wells Fargo is unaware of Colorado law establishing the existence of an "unlawful collections" tort. This is effectively a claim for wrongful foreclosure, which Colorado does not recognize. *See, e.g.*, *Schwartz v. Bank of Am., N.A.*, No. 10-cv-01225-WYD-MJW, 2011 WL 1135001, at *3-4 (D. Colo. Mar. 28, 2011) ("Colorado does not recognize a claim for damages based on 'wrongful foreclosure.'")

Second, the foreclosure proceeding was timely initiated in May 2015 through the Notice of Election and Demand ("NED") recorded on May 12, 2015, an argument that Plaintiff has never addressed, either in response to the Motion to Dismiss or in the instant Motion. Plaintiff's

argument that the foreclosure proceeding is not an "action" because no complaint was filed (Dkt. 1, pp. 16-18, ¶¶ 38-45) is without merit, as foreclosures are governed by statute and commenced by filing a NED, not a complaint. *See* C.R.S. §§ 38-38-101(1)(a), 38-38-102. Even if this were somehow untimely, Plaintiff's voluntary payments during the three HAMP trial periods restarted the clock on the statute of limitations. *See Drake v. Tyner*, 914 P.2d 519, 522 (Colo. App. 1996) (partial payment is a "voluntary acknowledgment of the debt from which the law implies a new promise to pay the balance"). Here, Plaintiff not only admits he made partial payments, but the HAMP documents expressly acknowledge the debt, as well as Wells Fargo's right to continue the foreclosure action upon conclusion of the trial period. (Dkt. 1, p. 3, ¶ 5; Ex. 8, §§ 2(B), 2(E), 4(B), 4(D)).

### F. Plaintiff's challenge of the Rule 120 process cannot succeed.

Though it does not appear to support a particular cause of action, Plaintiff argues that Colorado's non-judicial foreclosure process is unconstitutional and did not afford him due process. But the Tenth Circuit has expressly held that Colorado's Rule 120 procedure is consistent with the Constitution and provides due process. *See, e.g.*, *Mbaku v. Bank of Am., N.A.* ("*Mbaku III*"), 628 Fed. Appx. 968, 973 (10th Cir. June 15, 2015) (unpublished) (holding that because a mortgagor may assert in the Rule 120 proceeding that "the person seeking enforcement of the instrument does not have the rights of a holder in due course," the rule "satisfies Plaintiffs' due process concern") (citing C.R.S. § 4-3-305(c)). Further, Wells Fargo is not a state actor against whom a constitutional violation could be fairly alleged. *See id.* at 974; *see also Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1208 (10th Cir. 2005) (stating that the state-actor requirement is not satisfied by alleging a defendant's groundless invocation of a state statute); *Lewis v. JP Morgan*

11

*Chase Bank, N.A.*, No. 13-cv-01375-PAB-KLM, 2014 WL 1217948, at *3-6 (D. Colo. Mar. 24, 2014) (explaining why banks are not state actors when they pursue non-judicial foreclosures).

## II.     PLAINTIFF CANNOT DEMONSTRATE IRREPARABLE HARM.

While Plaintiff's property is likely to be sold if the foreclosure proceeds, such harm is not irreparable, as courts in this District have held. This is because while Plaintiff challenges Wells Fargo's right to foreclosure, he "fail[s] to show that [he is] entitled to remain in possession, e.g., by demonstrating that [he is] not in default on the loan." *Mbaku v. Bank of Am., N.A.* ("*Mbaku I*"), No. 12-cv-00190-PAB, 2012 WL 263095, at *2 (D. Colo. Jan. 30, 2012) (denying motion for temporary restraining order).

Plaintiff, like the one in *Mbaku*, fears that "[b]ecause defendant was not required to produce" the original note and deed of trust, the "defendant has no legal authority to foreclosure on [the] property." *Id.* But that fear is not enough to establish irreparable harm, because by "foreclosing without the aforementioned forms of evidence," Wells Fargo is deemed to indemnify Plaintiff in the event that another party presents the original documents to Plaintiff for payment. *See id.* (citing C.R.S. § 38-38-101(2)). "In light of that indemnification, plaintiffs do not risk being responsible to a party other than defendant for the original debt and, therefore, any harm that would flow from such a party seeking to recover from plaintiff is not irreparable." *Id.* Courts have also pointed to the statutory right to redemption, C.R.S. § 38-38-301, for additional grounds for why the harm resulting from a foreclosure is unlikely to be irreparable. *See, e.g.*, *Rosenfield v. HSBC Bank, USA*, No. 10-cv-00058-MSK-MEH, 2010 WL 2163787, at *5 (D. Colo. May 26, 2010) (also noting that "any subsequent harm in losing her property interest may be compensated by money damages").

### III. PLAINTIFF CANNOT ESTABLISH THAT AN INJUNCTION IS IN THE PUBLIC INTEREST.

Plaintiff's argument that the public interest favors an injunction until "the issues of fraud, due process and standing have been resolved" fails, because as argued above, those arguments fail as a matter of law. In addition to favoring enforcement of valid contracts, the public interest favors allowing Colorado's non-judicial foreclosure process to proceed consistent with the statute, the purpose of which is "to ensure the protection of debtors while maintaining a speedy, efficient procedure for creditors." *Plymouth Capital Co., Inc. v. District Court of Elbert County*, 955 P.2d 1014, 1015 (Colo. 1998). To halt the sale would be inconsistent with Colorado public policy as expressed by the statute.

### IV. PLAINTIFF CANNOT ESTABLISH THAT THE BALANCE OF HARMS AND EQUITIES FAVORS AN INJUNCTION.

In the Motion, Plaintiff notes that he will lose his property if the foreclosure proceeds, which is very likely true. But that is the contractual consequence of being in default since 2009, and it does not outweigh the harm to Wells Fargo for several years' worth of nonpayment on the loan, interest, property taxes, and insurance. *See, e.g.*, *Rosenfield*, 2010 WL 2163787, at *13 ("Defendant has suffered, and will continue to suffer, a financial hardship for the period of nonpayment."). Stated differently, Plaintiff has spent seven years in possession of the property, making only a handful of the payments he promised to pay. To continue to put off the sale would deprive Wells Fargo of its contractual rights while continuing to give Plaintiff the benefits of the loan he took. That is not equitable. As one court summed up: "If a foreclosure sale were to go forward on the property, the Plaintiff might risk losing her home; however, she also has the right to cure before the sale and the right to redeem with a junior lien holder following the sale of

the property." *Id.* Because the harms and equities do not tilt in Plaintiff's favor, no injunction should issue.

### V.     IF AN INJUNCTION ISSUES, THIS COURT SHOULD REQUIRE A MEANINGFUL BOND.

Wells Fargo may lose its ability to foreclose if the sale is continued much longer. *See* C.R.S. § 38-38-109(1) (stating that a sale cannot be "continued to a date later than twelve months from the originally designated date in the combined notice"). Thus, if this Court decides that an injunction should issue, it must be accompanied by a bond sufficient "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Here, due to the risk that a delayed sale will compromise Wells Fargo's ability to enforce its contractual rights, the appropriate bond is equivalent to the entire outstanding loan amount of $329,000, as evidenced by the current NED. (Dkt. 1, Ex. 20.) At the least, Plaintiff should be made to tender a bond equivalent to the past due payments Plaintiff has filed to make, and which he would have to tender to Wells Fargo if he wishes to reinstate his loan and avoid the presently scheduled foreclosure.

### CONCLUSION

For the foregoing reasons, as well as those expressed in its Motion to Dismiss, Wells Fargo requests that this Court deny the instant Motion, grant the Motion to Dismiss, and bring this dispute to an end.

DATED: July 15, 2016.

SNELL & WILMER L.L.P.

By:  *s/ Christopher J.L. Diedrich*
Christopher J.L. Diedrich
1200 17th Street, Suite 1900
Denver, Colorado 80202
Telephone:  (303) 634-2000
cdiedrich@swlaw.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

### CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2016, a true and correct copy of the foregoing **RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER** was filed and served electronically through this Court's CM/ECF system or served via U.S. Mail, first class postage prepaid, upon the following:

| | |
|---|---|
| Steven L. Hill, Esq.<br>RIGGS, ABNEY, NEAL, TURPEN,<br>ORBISON & LEWIS, P.C.<br>50 S. Steele St, Suite 600<br>Denver, Colorado 80209<br>Telephone: 303.298.7392<br>Fax: 303.298.7398<br>E-mail: shill@riggsabney.com | Holly R. Shilliday, Esq.<br>McCarthy Holthus, LLP<br>7700 E. Arapahoe Road, Suite 230<br>Centennial, Colorado 80112<br>Telephone: 303.952.6905<br>Fax: 866.894.7369<br>E-mail: hshilliday@mccarthyholthus.com |

*Attorneys for Plaintiff*

/s/ *Pamela Thede*
for Snell & Wilmer L.L.P.

24452922