IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01734-RBJ

DENNIS OBDUSKEY, an individual,

      Plaintiff,

v.

WELLS FARGO,
WELLS FARGO BANK,
WELLS FARGO & CO.,
WELLS FARGO BANK NA,
WELLS FARGO HOME MORTGAGE, and
MCCARTHY AND HOLTHUS LLP,

      Defendants.

---

## ORDER

---

This matter is before the Court on two motions to dismiss [ECF Nos. 14, 18] and a request for a temporary restraining order or preliminary injunction [ECF No. 39]. For the reasons described below, the Court grants both motions to dismiss and denies the motion for a temporary restraining order or preliminary injunction.

**FACTS**

In 2007 plaintiff Dennis Obduskey obtained a loan from Magnus Financial Corporation. ECF No. 1-16. The loan was in the amount of $329,940, and it was secured by his property at 132 Wagon Tongue Road in Bailey, Colorado (the property). *Id.* At some point Freddie Mac

acquired the loan.  *See* ECF No. 1-12.  Defendant Wells Fargo Bank, N.A. (Wells Fargo) services the loan.[1]  *See* ECF Nos. 1; 1-5.

Between 2008 and 2012 Wells Fargo offered Mr. Obduskey multiple loan modifications. ECF No. 1 at 2 ¶ 5.  During this four-year span, plaintiff made 12 "trial payments" pursuant to three different modification offers.  Wells Fargo accepted the payments and applied them as "late payments on the account and for other unspecified fees."  *Id.*  In 2009 Wells Fargo encouraged Mr. Obduskey to apply for a Home Affordable Modification program (HAMP) Loan Trial Period.  *Id.* at 2 ¶ 2.  Throughout this time Wells Fargo sent documents to plaintiff with "opposing messages within days of each other."  *Id.* at 3 ¶ 5.  Wells Fargo has "claimed numerous different owners of the note."  *Id.* at 5 ¶ 14.

In June 2009 plaintiff defaulted on the loan, and Wells Fargo began non-judicial foreclosure proceedings.  *Id.* at 16 ¶ 38; *see* ECF No. 1-28.  Over the following six years, multiple foreclosure proceedings were initiated but not completed.  *Id.* at 9 ¶ 30.  On June 30, 2009 Mr. Obduskey informed the Federal Trade Commission (FTC) of his ongoing problems with Wells Fargo during a public comment phase.  *Id.* at 2 ¶ 3.  In 2011 Wells Fargo failed to reply to issues contained in a qualified written request.  *Id.* at 3–4 ¶ 7.  In 2013 Wells Fargo or "contracted employees" left "door hangers" at Mr. Obduskey's home, "urging him to contact his mortgage servicer."  *Id.* at 8 ¶ 26.  Plaintiff alleges that each communication violated the Fair Debt Collection Practices Act.  *Id.*

---

[1] Wells Fargo claims that plaintiff also improperly named it as "Wells Fargo," "Wells Fargo Bank," "Wells Fargo & Co.," and "Wells Fargo Home Mortgage."  ECF No. 14 at 1.  The Court will refer to these entities as "Wells Fargo."

In 2014 Wells Fargo retained defendant McCarthy & Holthus, LLP (McCarthy) to pursue foreclosure of the property. *Id.* at 4–5 ¶¶ 12–13. Mr. Obduskey alleges that McCarthy failed to follow the requirements of the Fair Debt Collection Practices Act. *Id.* Mr. Obduskey received "undated" mailings from McCarthy in August 2014 advising plaintiff that the firm was serving as a debt collector. *Id.* at 7 ¶ 21. Plaintiff did not receive any validation from McCarthy before it initiated a new foreclosure action in May 2015. *Id.* at 7 ¶ 22. On June 11, 2015 plaintiff filed a complaint with the Consumer Financial Protection Bureau because of McCarthy's failure "to respond to a verification request response[.]" *Id.* at 4–5 ¶ 13. Mr. Obduskey states both that the firm "failed to provide an appropriate response" to him, and that "a written response by the Firm lacked the basic information necessary within a validation response." *Id.* at 7 ¶¶ 21–24.

Plaintiff's loan remains in default. *See* ECF No. 1-14. On August 12, 2015 plaintiff filed this suit, asserting five claims: (1) violation of the Fair Debt Collection Practices Act; (2) violation of the Colorado Consumer Protection Act; (3) defamation; (4) extreme and outrageous conduct; and (5) "commencement of an unlawful collections action." ECF No. 1 at 12–18. On September 25, 2015 Wells Fargo moved to dismiss all of plaintiff's claims. ECF No. 14. On November 2, 2015, McCarthy filed a motion to dismiss plaintiff's case in its entirety. ECF No. 18. Both motions have been fully briefed. On July 11, 2016 plaintiff moved for a temporary restraining order and preliminary injunction to enjoin the foreclosure sale set for July 20, 2016. ECF No. 39.

## ANALYSIS

### I.     Standard of Review.

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Importantly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted); *accord Robbins v. Okla. ex. rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal citation omitted).

### II.    Fair Debt Collection Practices Act.

Mr. Obduskey's first claim is for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. ECF No. 12–13. Plaintiff contends that Wells Fargo and

McCarthy violated multiple provisions of the FDCPA, "including, but not limited to" the following: communications with third parties (§ 1692c); harassment or abuse (§ 1692d); false or misleading representations (§1692e); unfair practices (§1692f); and validation of debts (§1692g). *Id.* at 12 ¶ 6. Both defendants move to dismiss this claim. ECF Nos. 14 at 3–6; 18 at 4–6.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices[.]" § 1692. The FDCPA regulates interactions between consumer debtors and "debt collectors." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). A defendant can only be held liable if it is a debt collector within the meaning of the FDCPA. *James v. Wadas*, 724 F.3d 1312, 1315–16 (10th Cir. 2013).

A. <u>Wells Fargo's Motion to Dismiss Plaintiff's FDCPA Claim.</u>

Wells Fargo raises a number of arguments for why plaintiff fails to state an FDCPA claim. ECF No. 3–6. First, Wells Fargo contends that it is not a debt collector as defined by the statute. *Id.* at 3–4. I agree. The statute's definition of "debt collector" excludes "any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person . . . ." § 1692(a)(6)(F); *see Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."). Courts have consistently held that a mortgage servicing company is not a debt collector within the meaning of the statute if the entity acquired the servicing rights before the loan was in default. *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 495, 2010 WL 3069699, at *1(10th Cir.

2010) (unpublished) (citing *Perry*, 756 F.2d at 1208); *Sudduth v. Citimortgage, Inc.*, 79 F.Supp.3d 1193, 1197 (D. Colo. 2015).

Mr. Obduskey's allegations treat Wells Fargo as the servicer of his loan, and he does not claim that he was in default when Wells Fargo acquired its servicing rights. To the contrary, Mr. Obduskey alleges that he began interacting with Wells Fargo as early as 2008 when defendant first offered him a loan modification. He did not default on his loan until 2009. ECF No. 1 at 3 ¶ 5. Mr. Obduskey also alleges that Wells Fargo "has claimed numerous different owners of the note." *Id.* at 5 ¶ 14. First, he claims that he was told that the holder was "an unidentified 'investor,' which morphed to assignment to Wells Fargo via a Mortgage Electronic Registration Systems (MERS) representative on May 3, 2011, allegedly backdated to the date the loan was signed on May 31, 2007." *Id.* He also claims that Wells Fargo clarified on June 30, 2015 that Freddie Mac has owned the note since June 18, 2007. *Id.* To the extent that Mr. Obduskey bases his claim on Wells Fargo's acting an assignee of the note, he alleges that the assignment was "backdated" to 2007, which is before plaintiff defaulted.

Therefore, because Mr. Obduskey was not in default when either Wells Fargo began servicing the loan or when it became the assignee of the debt, Wells Fargo does not qualify as a debt collector under the FDCPA. *See Garrett v. BNC Mortg., Inc.*, 929 F.Supp.2d 1120, 1128 (D. Colo. 2013). Mr. Obduskey's FDCPA claim against Wells Fargo is dismissed.

B. <u>McCarthy's Motion to Dismiss.</u>

McCarthy also moves to dismiss the FDCPA claim on multiple grounds. ECF No. 18 at 4–6. Specifically, McCarthy argues that the FDCPA does not apply to non-judicial foreclosures, and therefore plaintiff's claim must fail. *Id.* at 5. I agree.

Not all courts have agreed "on whether and when foreclosure activities are covered" by the FDCPA. *Yokomizo v. Deutsche Bank Securities, Inc.*, No. 11-cv-01630-CMA-KLM, 2011 WL 5024899, at *4 (D. Colo. Nov. 30, 2011). However, the majority of courts, including this one, have found that foreclosure activities are outside the scope of the FDCPA. *Schwitzer v. Wells Fargo Bank, N.A.*, No. 12-cv-01367-RBJ-MJW, 2013 WL 607832, at *5 (D. Colo. Feb. 19, 2013); *Sudduth*, 79 F.Supp.3d at 1197. Mr. Obduskey relies on cases outside of this district to support his position that the FDCPA covers non-judicial foreclosure. ECF No. 31 at 7.

Here, plaintiff alleges only that McCarthy took actions related to the filing of the non-judicial foreclosure action, contending that McCarthy failed to respond to a request for validation of the debt, and that the firm initiated a new foreclosure proceeding in May 2015. He does not allege that the law firm took any action to obtain payment on a debt. Moreover, plaintiff's allegation that he received mailings from McCarthy advising him that the firm was serving as a debt collector is insufficient to state an FDCPA claim. "[T]he fact that an entity identifies itself as a debt collector, or tells a consumer that it is attempting to collect a debt, is not sufficient on its own to bring that entity within the purview of FDCPA." *Garrett*, 929 F.Supp.2d at 1127 (citing *Maynard v. Cannon*, 401 Fed. App'x 389, 395, 2010 WL 4487113, at *5 (10th Cir. 2010) (unpublished) (a notice's language stating that it was "sent in an attempt to collect a debt" does not "inevitably lead to the conclusion that [defendant's] non-judicial foreclosure actions were FDCPA-covered debt collection activity."). In sum, the Court does not find any reason in plaintiff's complaint or briefs to support deviating from the majority view that foreclosure proceedings are not a collection of a debt. Mr. Obduskey's FDCPA against McCarthy is dismissed.

### III. Colorado Consumer Protection Act.

Plaintiff's second claim is for a violation of the Colorado Consumer Protection Act (CCPA), C.R.S. § 6–1–101 *et seq*. In order to state a CCPA claim, a plaintiff must allege the following elements:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.

*Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 434–35 (Colo. App. 2006).

Plaintiff claims that his allegations demonstrate "deceptive trade practices" in violation of the CCPA. ECF No. 1 at 14 ¶ 16. He further contends that defendants engaged "in these underhanded measures in an effort to increase revenues and obtain a competitive edge in the debt collection industry." *Id.* at 14 ¶ 17. Finally, he alleges that "numerous fees have been added to the original loan, but there is a complete failure" to explain such fees. *Id.* at 14 ¶ 18.

Among its many arguments for why plaintiff's CCPA claim should be dismissed, Wells Fargo contends that Mr. Obduskey does not satisfy the "public impact" requirement. ECF No. 14 at 6–7. I agree. In considering whether a challenged practice significantly impacts the public, courts consider the number of consumers directly affected, the "relative sophistication and bargaining power" of the affected consumers, and "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.*

Mr. Obduskey's complaint alleges private wrongs against him that only relate to his loan and his property. He fails to identify any public impact. *See Rhino Linings USA, Inc. v. Rocky Mountain Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003). Because plaintiff does not make any

allegations, even bare conclusory ones, about how defendants' conduct has any public impact, the Court finds that his CCPA claim must fail. *See Owens v. Nationstar Mortgage LLC*, No. 14-cv-01434-PAB-KLM, 2015 WL 1345536, at *4 (D. Colo. March 23, 2015).

McCarthy moves to dismiss on similar grounds. ECF No. 18 at 6–7. Plaintiff's failure to allege a significant public impact remains fatal to his claim. Thus, Mr. Obduskey's CCPA claims are dismissed against both defendants.

### IV. Defamation.

In Colorado, defamation is "a communication holding an individual up to contempt or ridicule that causes the individual to incur injury or damage." *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994). In order to state a claim for defamation, a plaintiff must allege the following elements:

> (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by publication.

*Lee v. Colorado Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009) (internal citations omitted).

Plaintiff bases his defamation claim on two theories: (1) false credit reporting and (2) filing documents related to the foreclosure. ECF No. 1 at 14–15 ¶¶ 23–28. First, Mr. Obduskey alleges that Wells Fargo "caused derogatory information on Plaintiff's personal credit report." *Id.* at 15 ¶ 25. Plaintiff claims that Wells Fargo reported "'dispute resolved; customer disagrees,' when no dispute was ever resolved." *Id.* Second, plaintiff argues that Wells Fargo "directed their legal counsel to file a civil action for the foreclosure of a home which became a matter of public record." *Id.* at 15 ¶ 23. The foreclosure appeared in local publications. *Id.* at 15 ¶ 24.

9

Wells Fargo moves to dismiss, arguing that plaintiff's defamation claim is barred by the statute of limitations, and Mr. Obduskey fails to allege that Wells Fargo made a *false* statement of a defamatory nature. ECF No. 14 at 11.

Even if the Court were to assume that plaintiff's claim is timely, Mr. Obduskey's defamation claim cannot survive a motion to dismiss because he fails to allege special damages. A published statement can be "libelous per se if it is defamatory on its face such that no extrinsic evidence is necessary to show either its defamatory nature or that it is of and concerning the plaintiff." *Lind v. O'Reilly*, 636 P.2d 1319, 1320 (Colo. App. 1981) (internal citations omitted) *declined to follow on other grounds by Lee*, 222 P.3d. Here, plaintiff does not contend that the statements are libelous per se. *See* ECF No. 1 at 14 ¶ 21.

Therefore, the statements must, if they are defamatory at all, be "libelous per quod, and they are therefore actionable only if special damages are pleaded and can be proved." *Lind*, 636 P.2d at 1320. Special damages are "limited to specific monetary losses, if any, which a plaintiff incurs as the result of publication of statements[.]" *Id.* at 1321. Such damages "do not include injuries to a plaintiff's reputation or feelings which do not result in specific monetary loss." *Id.* Finally, the damages "'must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation.'" *Id.* (quoting Restatement (Second) of Torts § 575, Comment b (1977)).

Mr. Obduskey alleges that Wells Fargo published the statements to "deliberately cause damage to Plaintiff's reputation," and he claims that he is entitled to recover "actual damages, his actual damages trebled, plus reasonable attorney's fees and costs." ECF No. 1 at 15 ¶¶ 27–28. However, Mr. Obduskey fails to allege any specific monetary loss.

McCarthy moves to dismiss on similar grounds. Additionally, McCarthy contends that plaintiff "cannot recover for defamation with respect to reports made to credit bureaus because such a claim is preempted pursuant to 15 U.S.C. § 1681h(e)." ECF No. 18 at 8–9. The Court need not consider this argument because, as discussed above, plaintiff's failure to allege special damages is fatal to his defamation claim.

For the reasons discussed above, Mr. Obduskey's defamation claim against Wells Fargo and McCarthy is dismissed.

## V.     Extreme and Outrageous Conduct.

Under Colorado law an entity that engages in extreme and outrageous conduct either recklessly or with the intent of causing an individual severe emotional distress can be held liable for damages if the victim does experience severe emotional distress. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999). "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 883 (Colo. 1994). Colorado courts have erected a high bar for alleging an outrageous conduct claim. *See Coors*, 979 P.2d at 665. The Colorado Supreme Court noted that

> "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'outrageous!'"

*Rugg v. McCarty*, 476 P.2d 753 (Colo. 1970) (quoting the Restatement (Second) of Torts § 46 (1965)).

11

Plaintiff brings two theories about why defendants' conduct was "extreme and outrageous." First, Mr. Obduskey argues that he "has been forced to deal with three law firms regarding the debt," and that any "progress of stipulation and settlement has been lost." ECF No. 1 at 15 ¶ 32. Second, plaintiff contends that Wells Fargo "failed to provide accurate information pertaining to the current note holder." *Id.* at 16 ¶ 33. He concludes that "defendants engaged in the conduct recklessly or with the intent of causing Plaintiff [to] suffer distress." *Id.* at ¶ 34.

Wells Fargo contends that Obduskey fails to state a claim because he has not alleged any conduct that could be considered extreme or outrageous. ECF No. 14 at 12. Wells Fargo also argues that plaintiff's second theory regarding the holder of the note is "plainly false" based on Mr. Obduskey's supporting documents. *Id.*

The Court agrees that Mr. Obduskey's claim for extreme and outrageous conduct should be dismissed. Even when taking plaintiff's allegations as true and construing them in his favor, Mr. Obduskey fails to identify conduct that satisfies this tort's high bar. There is nothing "so outrageous in character, and so extreme in degree" about Wells Fargo's working with three law firms over the course of this matter or with the alleged failure to provide accurate information about the note holder. Plaintiff fails to allege an "extreme act, both in character and degree" or a series of actions indicating the "infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994). Moreover, courts in Colorado frequently dismiss outrageous conduct claims by borrowers against mortgagees or servicers. *See, e.g. Hewitt v. Pitkin County Bank & Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995) (no outrageous conduct claim where plaintiff alleged that a bank "accepted loan payments from him and then reneged on its promise not to commence

foreclosure proceedings against him, and instead commenced such proceedings the very next day[.]"); *Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291943, at \*\*18–19 (D. Colo. June 17, 2013), *report and recommendation rejected in part on other grounds*, 2013 WL 5291947 (D. Colo. Sept. 18, 2013) (allegations do not rise to the level of extreme or outrageous conduct despite the "inconvenience, pain, and suffering the threat of losing their home may have caused.").

McCarthy moves to dismiss, arguing that Mr. Obduskey's complaint fails to "identify wrongful conduct on the part of the Firm." ECF No. 18 at 9. Additionally, McCarthy contends that plaintiff does not allege any actions "that could be deemed extreme or outrageous." *Id.* As discussed above, plaintiff's extreme and outrageous conduct claim is premised on having to "deal with three law firms regarding the debt" and Wells Fargo's providing inaccurate information about the note holder. Plaintiff does not allege that McCarthy did anything "extreme or outrageous" during its representation of Wells Fargo. Plaintiff claims only that McCarthy failed to respond to a request for validation of the debt, and that the firm initiated a new foreclosure proceeding in May 2015. Such allegations do not rise to the level of "extreme or outrageous" conduct. *See Mbaku v. Bank of America, N.A.*, No. 12-cv-00190-PAB-KLM, 2013 WL 425981, at \*8 (D. Colo. Feb. 1, 2013) (holding that it was not extreme or outrageous to initiate foreclosure proceedings).

In sum, the Court finds that Mr. Obduskey fails to state a claim for extreme or outrageous conduct.

### VI.     Unlawful Collections Claim.

Plaintiff styles his fifth claim as "commencement of unlawful collections action." ECF No. 1 at 16. The Court is unaware of an "unlawful collections" tort under Colorado law. This appears to be a claim for wrongful foreclosure, which Colorado courts do not recognize. *See, e.g.*, *Schwartz v. Bank of Am., N.A.*, No. 10-cv-01225-WYD-MJW, 2011 WL1135001, at **3–4 (D. Colo. Mar. 28, 2011) ("Colorado does not recognize a claim for damages based on 'wrongful foreclosure.'"). However, plaintiff's "unlawful collections" claim seems to rest on the notion that Wells Fargo's foreclosure action is time-barred and improper. ECF No. 1 at 16–18. The Court will consider his allegations related to these theories.

Plaintiff contends that Wells Fargo sent him a default letter on June 5, 2009. *Id.* at 16 ¶ 38. The foreclosure proceedings were initiated on May 12, 2015 when the Notice of Election and Demand (NED) was filed. *Id.* at 17 ¶ 44. Mr. Obduskey alleges that the foreclosure proceedings are untimely pursuant to the six-year statute of limitations under C.R.S. § 13–80–103.5. *Id.* at 17–18 ¶¶ 41, 45. Finally, Mr. Obduskey argues that defendants failed to properly commence a civil action because they did not file a complaint with a court. *Id.* at 17 ¶ 44.

Wells Fargo moves to dismiss, arguing that it timely and properly initiated its foreclosure action. ECF No. 14 at 14–15. Wells Fargo contends that the six-year statute of limitations in C.R.S. § 13–80–103.5 applies to the collection of a debt, and that the correct limitations period for foreclosure proceedings is 15 years pursuant to C.R.S. § 38–39–205. *Id.* at 14. Additionally, Wells Fargo argues that, even if the six-year limitations period applies, plaintiff tolled the statute of limitations by making voluntary payments during the HAMP trial periods. *Id.* Finally, Wells

Fargo asserts that it properly initiated the foreclosure by filing and recording the NED, and that it did not have a responsibility to file a complaint. *Id.* at 14–15.

The Court agrees that plaintiff fails to allege that the foreclosure proceedings were untimely or improperly initiated. First, as Wells Fargo clarifies, it is not suing to enforce a promissory note, but rather is exercising its right to foreclose pursuant to a deed of trust. Therefore, the Court does not perceive any reason as to why the 15-year limitations period under § 38–39–205 would not apply. *See Mortgage Investments Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1181 (Colo. 2003).

However, even if the general six-year limitations period did apply, the Court finds that plaintiff's voluntary payments tolled the statute of limitations. *Drake v. Tyner*, 914 P.2d 519, 522 (Colo. App. 1996) ("under certain circumstances, a new promise to pay a debt, an unqualified acknowledgment of a debt from which a promise to pay may be implied, or a part payment of a debt will start the limitations period running anew."). "In the case of a single debt not yet barred by the statute of limitations, partial payment alone tolls the statute of limitations." *Id.* (internal citations omitted). Here, plaintiff admits that he made 12 partial payments between 2008 and 2012. ECF No. 1 at 3 ¶ 5. He does not allege that the payments were involuntary. *See Drake*, 914 P.2d at 522 (partial payment is a "voluntary acknowledgment of the debt from which the law implies a new promise to pay the balance."). Therefore, each of the 12 payments restarted the clock, and the foreclosure action is timely by either measure.

The Court finds that plaintiff's second argument—that Wells Fargo failed to properly initiate its foreclosure proceedings because it failed to file a complaint—is without merit. Under Colorado law, foreclosures are initiated by the debt holder's filing of the NED. *See* C.R.S. §§ 38–

15

38–101(1)(a). A court becomes involved later when the holder seeks an Order Authorizing Sale pursuant to Rule 120 of the Colorado Rules of Civil Procedure. *See* C.R.S. § 38–38–105(2)(a); C. R. C. P. 120(a), (d). Wells Fargo was not required to file a complaint in order to initiate the foreclosure proceedings.

McCarthy moves to dismiss on the same grounds. For the reasons just discussed, the Court concludes that the May 2015 foreclosure action was timely. In sum, the Court finds that plaintiff's "wrongful collections action" fails.

### VII.     Plaintiff's Other Allegations.

Mr. Obduskey's complaint includes many other allegations that do not directly appear to support his five causes of action. For example, plaintiff alleges that Wells Fargo did not respond in a timely manner to his June 15, 2011 Qualified Written Response (QWR). ECF No. 1 at 3–4, ¶¶ 7–10. Even if the Court were to take this allegation as true, plaintiff does not bring a claim under the Real Estate Settlement Procedures Act (RESPA), which creates the obligation to respond to a QWR. Additionally, RESPA claims are subject to a three-year statute of limitations, so any claim would be untimely. 12 U.S.C. § 2614. Finally, plaintiff does not allege damages resulting from the failure to respond to the 2011 QWR. *See Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1145–46 (D. Colo. 2013).

Additionally, Mr. Obduskey alleges that Wells Fargo "knew or should have known that the Colorado Rule 120 foreclosure process" deprives "consumers of due process." ECF No. 1 at 4 ¶ 10. Even if plaintiff had pled a constitutional claim, which he did not, neither defendant is a state actor against whom a constitutional claim can be brought. *See Lewis v. JP Morgan Chase*

*Bank, N.A.*, No. 13-cv-01375-PAB-KLM, 2014 WL 1217948, at **3–6 (D. Colo. Mar. 24, 2014) (banks are not state actors when pursuing non-judicial foreclosures).

### VIII.  Motion for Temporary Restraining Order or Preliminary Injunction.

On July 11, 2016 plaintiff filed a motion seeking a temporary restraining order (TRO) or preliminary injunction to prevent the foreclosure of the property. ECF No. 39 at 1. The foreclosure sale is scheduled for July 20, 2016. *Id.* at 3. The Court denies both requests. Because the Court finds that plaintiff fails to state a claim on which relief could be granted, he is not entitled to a TRO or a preliminary injunction. *See Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (to obtain a preliminary injunction, a movant must first establish that he has "a substantial likelihood of success on the merits[.]").

### ORDER

For the reasons stated above, defendant Wells Fargo's motion to dismiss [ECF No. 14] and defendant McCarthy and Holthus LLP's motion to dismiss [ECF No. 18] are GRANTED. Plaintiff Dennis Obduskey's motion for a temporary restraining order or preliminary injunction [ECF No. 39] is DENIED. Plaintiff's claims are dismissed with prejudice.

DATED this 19th day of July, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge