IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01734-JLK

DENNIS OBDUSKEY,

    Plaintiff,

v.

WELLS FARGO,
WELLS FARGO BANK,
WELLS FARGO & CO.,
WELLS FARGO BANK, N.A.,
WELLS FARGO HOME MORTGAGE, and
MCCARTHY AND HOLTHUS LLP,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Kane, J.

This case was reassigned to me because Judge R. Brooke Jackson disclosed that either he or his wife owned stock in Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] during the time he presided over the case. Although Judge Jackson has recused, he did so after ruling on the merits and entering final judgment in favor of Defendants Wells Fargo and McCarthy and Holthus, LLP ("McCarthy"), and against Plaintiff Dennis Obduskey. In response to Judge Jackson's disclosure of the grounds for his disqualification, Mr. Obduskey requested "at least three weeks to locate counsel and . . . potentially request a review." Pl.'s Resp. to Letter from Clerk at 1, ECF No. 51. Wells Fargo requested a similar extension of time to respond. Wells Fargo Resp. to Letter from Clerk at 2, ECF No. 55.

---

[1] Wells Fargo Bank, N.A. asserted Mr. Obduskey improperly filed suit against Wells Fargo, Wells Fargo Bank, Wells Fargo & Co., and Wells Fargo Home Mortgage. *See* Wells Fargo Mot. to Dismiss at 1, ECF No. 14.

1

I have conducted a *sua sponte* review of the case. For the reasons stated in this Order, I find the circumstances here do not warrant vacatur—the only relief available to Mr. Obduskey—as there was no prejudicial error in the judgment or rulings against him.

*Background*

In 2007, Mr. Obduskey obtained a loan from Magnus Financial Corporation to purchase a home in Bailey, Colorado. The loan was secured by Mr. Obduskey's property and was serviced by Wells Fargo. Mr. Obduskey defaulted on the loan in June 2009. Wells Fargo initiated nonjudicial foreclosure proceedings the next month by filing a Notice of Election and Demand for Sale by Public Trustee ("NED"), pursuant to Colorado law. *See* 7/10/2009 NED, ECF No. 1-29. That nonjudicial foreclosure proceeding, as well as two others on the property, was not completed.

Between 2008 and 2012, Wells Fargo accepted 12 trial payments from Mr. Obduskey in accordance with three loan modification offers. Nevertheless, his loan was not modified. Over the course of that four-year span, Wells Fargo sent documents to Mr. Obduskey with "opposing messages within days of each other" and it "claimed numerous different owners of the note." Compl. at 3 ¶ 5; 5 ¶ 14. In January 2013, Mr. Obduskey became aware that Wells Fargo had reported "dispute resolved; customer disagrees" to the credit bureaus—information he describes as "derogatory." *Id.* at 15 ¶ 25. That same year, despite being notified that Mr. Obduskey was represented by counsel, either Wells Fargo or an authorized representative began posting monthly notices at Mr. Obduskey's home, urging him to contact his mortgage servicer. *Id.* at 8 ¶ 26. When he called the phone number listed on the notices, he was directed to Wells Fargo. *Id.*

In 2014, Wells Fargo retained a new law firm, McCarthy and Holthus, LLP, to initiate a fourth nonjudicial foreclosure of Mr. Obduskey's property. McCarthy sent Mr. Obduskey undated letters in August 2014 advising him that the firm was serving as Wells Fargo's debt collector, and that Wells Fargo intended to re-initiate foreclosure proceedings. The notices informed Mr. Obduskey that McCarthy would assume, for purposes of the Fair Debt Collection Practices Act (the "FDCPA" or "Act"), that the debt was valid unless Mr. Obduskey responded within 30 days. The FDCPA states:

> If the consumer notifies the debt collector in writing within [30 days] . . ., the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Although Mr. Obduskey requested verification of the debt, McCarthy did not provide the requested information before initiating a foreclosure action by filing an NED in May 2015. As with the earlier foreclosure attempts, the proceedings "became a matter of public record" and notice of the proceeding appeared in local publications. Compl. at 15 ¶¶ 23, 24.

Mr. Obduskey filed the Complaint in this case in August 2015. In it, he alleged (1) violations of the FDCPA, 15 U.S.C. §§ 1692, *et seq*.; (2) unfair and deceptive trade practices in violation of the Colorado Consumer Protection Act (the "CCPA"), Colo. Rev. Stat. §§ 6-1-101 *et seq*.; (3) defamation; (4) extreme and outrageous conduct; and (5) "commencement of an unlawful collections action." Compl. at 12-18, ECF No. 1. Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and Judge Jackson granted the motions on

July 19, 2016, dismissing each of Mr. Obduskey's claims with prejudice.[2] *See* 7/19/2016 Order, ECF No. 41. In his ruling, Judge Jackson determined neither Wells Fargo nor McCarthy qualified as a debt collector under the FDCPA and, consequently, its provisions did not apply. *Id.* at 5-7. He dismissed the remaining four claims for failure to allege a necessary element or failure to plead a recognized cause of action. *Id.* at 8-16. Mr. Obduskey appealed.

On appeal, the Tenth Circuit Court of Appeals conducted a *de novo* review.[3] *See Obduskey v. Wells Fargo*, 879 F.3d 1216 (10th Cir. 2018), *aff'd sub nom. Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019). After noting a division among the Circuit Courts, the Tenth Circuit held for the first time that "[e]ntities engaged in non-judicial foreclosure actions in Colorado are not debt collectors under the FDCPA." *Id.* at 1221. The Court affirmed Judge Jackson's dismissal of Mr. Obduskey's FDCPA claim on that basis. It also affirmed the dismissal of Mr. Obduskey's remaining claims, noting they only "warrant[ed] summary treatment." *Id.* at 1223. Again, Mr. Obduskey appealed.

The United States Supreme Court granted Mr. Obduskey's petition for certiorari as to his FDCPA claim against McCarthy[4] "in light of [the] different views among the Circuits about application of the FDCPA to nonjudicial foreclosure proceedings." *Obduskey*, 139 S. Ct. at 1035.

---

[2] Judge Jackson also denied Mr. Obduskey's request for a temporary restraining order and preliminary injunction based on his conclusion that dismissal was appropriate. *See* 7/19/2016 Order at 17.

[3] A *de novo* review means the reviewing court "uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." *Appeal De Novo*, Black's Law Dictionary (11th ed. 2019).

[4] The Tenth Circuit agreed with the district court that Wells Fargo is not a "debt collector" under the FDCPA because it began servicing Mr. Obduskey's loan before he went into default. *Obduskey v. Wells Fargo*, 879 F.3d at 1219 (citing 15 U.S.C. § 1692a(6)(F) (excluding "any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person")); *see also* 7/19/2016 Order at 6. McCarthy, on the other hand, began its collection efforts after Mr. Obduskey's default.

The Court considered the extent to which the FDCPA applies to nonjudicial foreclosure proceedings by focusing on the Act's "limited-purpose definition" as it applied to McCarthy. *Id.* at 1036 ("For the purpose of section 1692f(6) [the] term [debt collector] also includes any person . . . in any business the principal purpose of which is the enforcement of security interests." (quoting 15 U.S.C. § 1692a(6))). While the parties did not dispute McCarthy was subject to section 1692f(6)'s prohibitions, they disagreed about whether it was subject to the main coverage of the Act. *Id.* The Supreme Court held that McCarthy was not subject to the Act's main provisions. *Id.* at 1038 ("[B]ut for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act."). Consequently, on March 20, 2019, the Tenth Circuit's judgment was affirmed.

*Judge Jackson's Recusal*

On November 8, 2021, the Clerk of the Court notified Mr. Obduskey of Judge Jackson's recusal and the reason therefor, explaining that the "stock ownership would have required recusal under the Code of Conduct for United States Judges . . . ." Letter from Clerk at 1, ECF No. 50. Indeed, the Code of Conduct provides:  "A judge . . . should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Conduct for United States Judges, Canon 2(A). This provision is advisory and admonitory as reflected in the word "should." More to the point, and binding as a matter of law, is the statutory provision, 28 U.S.C. § 455(a), which states "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The word "shall" makes this statute mandatory rather than advisory. Section 455(a) can be violated without knowledge of a disqualifying circumstance, though a "judge's lack of

5

knowledge . . . may bear on the question of remedy." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988).

Section 455(b) specifically compels a judge to disqualify himself if either he or his spouse "has a financial interest . . . in a party to the proceeding." It matters not how small the ownership interest is, or how trivial it might be in the context of the judge's financial affairs, as section 455(b) applies to any financial interest, "however small." *Id.* § 455(d)(4). Additionally, section 455(c) states: "A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse . . . ."

Pursuant to these provisions, Judge Jackson should have recused from this case upon its assignment to him without taking any other action beforehand. Nevertheless, he recused in accordance with Canon 3(C)(1) of the aforementioned Code once the Wells Fargo stock ownership was brought to his attention. *See* Order of Recusal, ECF No. 59.

The Clerk's letter regarding the grounds for recusal invited Mr. Obduskey to submit a response and advised that any such response would be considered by another judge of this court without the participation of Judge Jackson. On November 30, 2021, Mr. Obduskey filed a timely response in which he stated he was not represented by counsel, and he had only received a copy of the Clerk's letter a week earlier. Pl.'s Resp. to Letter from Clerk at 1. Mr. Obduskey requested at least three weeks to find new counsel and to "determine [his] ability to pursue the matter in the courts and potentially request a review." *Id.* Aware of Mr. Obduskey's intentions to retain new counsel, his prior counsel filed a Motion to Withdraw as Counsel of Record (ECF No. 53) two days later. That motion is hereby GRANTED. More than four months have passed since Mr. Obduskey submitted his letter and no new attorney has entered an appearance.

*Independent Review*

Following the submission of Mr. Obduskey's letter and reassignment of this case to me, it is incumbent upon me to review the case *de novo* to confirm that no error affected Mr. Obduskey's substantial rights. To be sure, an error under § 455(b) occurred when Judge Jackson failed to disclose the stock ownership and recuse from the case immediately upon its having been drawn to him by the Clerk's Office. The purpose of my review is to determine whether that error was prejudicial to Mr. Obduskey.[5]

In *Liljeberg*, the Supreme Court explained that "[s]ection 455 does not, on its own, authorize the reopening of closed litigation. However, . . . Federal Rule[] of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." 486 U.S. at 863. "Rule 60(b) . . . grants federal courts broad authority to relieve a party from a final judgment" by vacating the judgment. *Id.* Rather than encourage Mr. Obduskey to pursue a fruitless motion, I have preemptively conducted a comprehensive review of the case and, in doing so, determined that no prejudicial error would support vacatur here.

---

[5] In considering violations of 28 U.S.C. § 455(a), the Supreme Court has directed courts to consider "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864; *see also Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir. 1994) (extending the *Liljeberg* analysis to violations of § 455(b)). In conducting my review, I draw a careful distinction between the usual standard of "harmless error," i.e., an error or defect that does not affect a party's substantial interest, and the factors articulated by the Supreme Court. I do so because any violation of § 455 causes harm to the integrity of the judicial process and can impair public confidence in the judicial system even when it is promptly corrected. After all, "[t]here are few characteristics of a judiciary more cherished and indispensable to justice than the characteristic of impartiality." *United States v. Greenspan*, 26 F.3d 1001, 1007 (10th Cir. 1994). However, under the circumstances here—in particular, Judge Jackson's lack of awareness of the grounds for disqualification during the time he presided over the case—my review is focused on whether the belatedly disclosed stock ownership was prejudicial to Mr. Obduskey.

This case was decided *entirely* on issues of law taking all of Mr. Obduskey's allegations as true for purposes of the motions to dismiss. Judge Jackson made no findings of fact on contested matters of evidence. He did not, nor was he required to, make any determinations of credibility that might have created a possibility of bias. Hence, Judge Jackson made no discretionary rulings or subjective determinations that favored Defendants.

Judgment entered against Mr. Obduskey because the allegations of his Complaint failed to put forth any claim upon which relief could be granted as a matter of law. Specifically, Mr. Obduskey did not satisfy the CCPA's public impact requirement;[6] he failed to allege special damages, as required for his defamation claim; and he failed to identify conduct that meets the "high bar" necessary to establish a claim for extreme and outrageous conduct. *See* 7/19/2016 Order at 8-13. He failed to state his fifth claim because there is no "unlawful collections" claim or wrongful foreclosure tort under Colorado law. *Id.* at 14. While Mr. Obduskey's FDCPA cause of action showed the most promise, it was also dismissed as a matter of law by all three courts to consider his arguments.

Judge Jackson's decision on appeal to the Tenth Circuit was given *de novo* review. The Tenth Circuit affirmed the dismissal for failure to state a claim. The Court of Appeal's decision affirming Judge Jackson's Order granting the motions to dismiss is determinative of the present issue because none of Judge Jackson's conclusions played a role in the Tenth Circuit's decision.

---

[6] To prevail on a claim for relief under the CCPA, a plaintiff must prove five elements, the third of which is the requirement that the defendant's conduct impact the public:
> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006).

Moreover, the review of the Order was made by an independent panel of appellate judges, none of whom had any disqualifying interest concerning the parties or the judgment entered by the trial court.

The basis for Mr. Obduskey's FDCPA claim—his strongest claim—was that Defendants were debt collectors as defined by the Act. As to Wells Fargo, both the Tenth Circuit and the Supreme Court disagreed with Mr. Obduskey. In regard to McCarthy, the Tenth Circuit held it was not a debt collector because the FDCPA does not apply to Colorado's nonjudicial foreclosure proceedings. The Supreme Court largely concurred with that analysis, however it identified an exception for entities such as McCarthy. The Court held that McCarthy is only a debt collector within the meaning of the Act for the limited purpose of enforcing security interests under section 1692f(6) of the FDCPA. *Obduskey*, 139 S. Ct. at 1038.

According to section 1692f(6), "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(6). In addition, "the following conduct is [also] a violation of this section":

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> - there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> - there is no present intention to take possession of the property; or
>
> - the property is exempt by law from such dispossession or disablement.

*Id.* (numbering omitted). After applying this sole exception to Mr. Obduskey's FDCPA claim, the Court determined McCarthy did not violate § 1692f(6) because "the notices sent by McCarthy were antecedent steps required under state law to enforce a security interest," and "the Act's (partial) exclusion of 'the enforcement of security interests' must also exclude the legal

9

means required to do so." *Obduskey*, 139 S. Ct. at 1039. In sum, the Court dismissed Mr. Obduskey's strongest claim on the basis of statutory interpretation.

To put this matter in a stark comment: Twelve other judges, three on the Court of Appeals and nine on the Supreme Court, gave this case a fresh look unhindered by an appearance of impropriety at all. While Judge Jackson's failure to recuse is sufficient to warrant this examination by another judge, I find his undisclosed stock interest in Wells Fargo could not have had any influence or caused any prejudice to Mr. Obduskey. Consequently, there is no useful purpose in reopening this case.

*Conclusion*

Upon completion of an independent and comprehensive review of the orders and rulings in this case, I find that the undisclosed ownership of Wells Fargo stock by Judge Jackson or his wife could not have had any influence on the outcome of this case. As such, Mr. Obduskey was not prejudiced by Judge Jackson's untimely recusal. The matter is deemed terminated.

DATED this 15th day of April, 2022.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE